In the matter of THE MORTGAGE GUARANTY CORPORATIONS' REHABILITATION ACT affecting the FIDELITY UNION TITLE AND MORTGAGE GUARANTY COMPANY.

[Argued May 22d, 1945. Decided September 27th, 1945.]

*Messrs. McCarter, English & Egner (Mr. James R. E. Ozias)*, for the appellant New Jersey Realty Company.

*Messrs. Hood, Lafferty & Emerson (Mr. Charles Danzig,* for the respondent Fidelity Union Trust Company.

*Messrs. Bilder, Bilder & Kaufman (Mr. Samuel Kaufman)*, for the respondent J. I. Kislak, Inc.

The opinion of the court was delivered by

CASE, J.

This is an appeal by New Jersey Company from so much of an interlocutory decree, advised by Vice-Chancellor Stein

and dated January 23d, 1945, as directed that company, if it exercised its option to purchase certain real estate, to pay commissions on the transaction to J. I. Kislak, Inc., broker.

The Fidelity Union Title and Mortgage Guaranty Company formerly engaged in various activities, one of which was the loaning of money on real estate mortgages secured by the bonds of the owners. On such basic security it issued and sold participation certificates representing shares in a particular mortgage investment and carrying the company's guarantee. When the company met with financial reverses, its affairs were subjected to readjustment (presumably under the auspices of the Commissioner of Banking and Insurance by virtue of *chapter 71, P. L. 1933,* or kindred or successor acts, although the precise statutes are not cited to us) dependent upon the approval of the Court of Chancery, and in the course of the procedure that court made various general orders, one of which, dated April 16th, 1935, was designated "General Order No. 2." That order went at length into the various incidents pertaining to a sale of a mortgaged property. The seventeenth paragraph, doubtless with the purpose of permitting the "trustees" of the involved company to take over a property which had exhausted the opportunities of an open market and to labor with it for a better return, was made to provide:

"17. In any case in which, upon application for the approval of a *bona fide* sale or other disposal for less than an amount which may be sufficient to satisfy the amount due to the investors and to the Trustees upon their subordinate interest, the court shall permit the Trustees to take the trust *res* upon payment to the investors of the amount which they would have received had such sale been consummated, the Trustees shall pay or cause to be paid the amount which may be due for commissions to any real estate broker or for other proper expenses incurred by the trustee or the investors in procuring the offer for sale submitted to the court, if such commissions and other expenses be approved by the court."

Neither that order, nor any portion thereof, is under appeal.

The present case comes within the application of the seventeenth paragraph. There was a foreclosure of a mortgage upon which participation certificates had been issued,

and the Fidelity Union Trust Company bought in the title under such circumstances as made it a trustee (not to be confused with the "Trustees" referred to in the quoted seventeenth paragraph) for those (called the "investors") who had invested in and were the holders of the participation certificates and, secondarily, a trustee for the subordinated interest of the New Jersey Realty Company which, to this extent, had taken the place of the Fidelity Union Title and Mortgage Guaranty Company and of the "Trustees" referred to in the said seventeenth paragraph. The Fidelity Union Trust Company, after buying at the foreclosure sale, endeavored to sell the title and to that end listed the property with twenty-five real estate brokers. Offers from prospective purchasers were received in chronological order as follows: $75,000, $50,000, $70,000, $75,000, $65,000, $80,000, $72,000, $70,000, $85,000 and $75,000: all of which were rejected as inadequate. The Fidelity Union Trust Company, after a fruitless experience of several years' duration with many brokers, created an exclusive sales agency with a single broker, J. I. Kislak, Inc. Through that channel came three offers, one of $90,000 which was rejected; one of $93,000 on which the trustee was about to close but did not; and, finally one of $100,500 which was accepted and, as was necessary under the operative orders in Chancery, was submitted to that court for approval. Under the general orders (paragraph 17, *supra,* and *alia*) where there was a sale for less than enough to satisfy the amount due the investors and also the amount due the New Jersey Realty Company on its subordinated claim, it was necessary for the Fidelity Union Trust Company, as trustee, to report the sale to Chancery and to give notice to the "Trustees," here represented by the New Jersey Realty Company, so that the option mentioned in the seventeenth paragraph might be exercised. Notice was duly given. The New Jersey Realty Company appeared on the return day "to consider the contract." The court determined that it was to the advantage of the investors and of the trust estate that the premises be sold for the sum of $100,500 upon the conditions set forth in the agreement of sale and that unless the New Jersey Realty Company should serve notice within five

days thereafter that it would take title at that price and upon the conditions contained in the contract between the trustee and Louis Drogan, the proposed purchaser, the Fidelity Union Trust Company as trustee should make the conveyance to Drogan. The decree further provided—and this is the portion from which the appeal runs—"that the payment of commissions to J. I. Kislak, Inc., be and is hereby approved and said J. I. Kislak, Inc., is entitled to commissions in the event New Jersey Realty Company takes title to the property, or Louis Drogan, or his assignee takes title to the property."

It is the contention of the appellant, New Jersey Realty Company, first, that the designated portion of the decree is contrary to General Order No. 2 in that it imposes upon appellant the payment of commissions notwithstanding, according to the assertion, that the commissions were not due, that the Fidelity Union Trust Company was not legally obligated to pay the commissions and that the sole duty of appellant was to pay such amount as otherwise would have gone to the investors, namely, the contractual sale price ($100,500) less the amount of commissions which would have been paid to the broker if the sale to Drogan had been closed, and, second, that the Court of Chancery should not have approved the payment of commissions for the reason that the broker had an adequate remedy at law to enforce any lawful collection.

At the hearing in Chancery counsel for appellant conceded that the trustee would have been under a legal obligation to pay broker's commissions had the sale to Drogan been approved but contended that since the appellant company proposed to exercise the privilege of taking over the property at the bid price there was no obligation upon the trustee to pay commissions and therefore no obligation upon the appellant to pay them; and that, in substance, is its major point here. The inequity of that position is apparent. The trustee, unsuccessful in effecting a satisfactory sale by its own efforts or by general listing with numerous brokers, entered into contractual relations with a single broker and thereby granted to that broker, for a period of six months, an exclusive sales agency carrying commissions to be payable when "the deed to said property has been delivered and accepted and the full

purchase price paid." The broker produced one and another willing and able purchaser at progressively increased prices culminating in an offer greater by $15,500 than any procured before it was employed; an offer which was accepted by the trustee, and, along with the payment of broker's commissions, approved by the court, subject to the coming in of the New Jersey Realty Company and the taking over by it of the property at the same price, and upon the same terms, including the paying of commissions. The investors, whose hope for recoupment lay in the successful sale of the property, were gainers from the broker's services. So were all the other persons interested except the New Jersey Realty Company, standing in the shoes of the Fidelity Union Title and Mortgage Guaranty Company; and perhaps even that subordinated interest profited by the increased reduction of the guaranteed debt, although the details of the New Jersey Realty Company's status are not sufficiently before us to make this clear. It is difficult to understand why, if there must be a loss, it should not fall there. New Jersey Realty Company may, by exercising its option to purchase, nullify a sale to a prospective buyer produced by a broker at whatever labor and expense, and if in doing this it may, without regard to circumstances, buy at a reduction in purchase price equal to the amount of the broker's commissions without obligation to pay anything to the producing broker, it is likely that the investors in participation certificates issued by the Fidelity Union Title and Mortgage Guaranty Company with respect to other mortgages will experience a depressed zeal on the part of brokers in future transactions of like nature.

We consider that the Court of Chancery in finding for payment of the disputed commissions under the circumstances of the case was acting within sound discretion and according to the practice established by General Order No. 2, *supra*. We interpret the word "due" as used in the expression "due for commissions" in paragraph 17 to refer to the commissions that would be payable to a broker on the closing of a transaction in accordance with a court order if the New Jersey Realty Company, standing in the shoes of the "Trustees," should not exercise its option.

Appellant seeks to buttress its contention by citing the action of Chancery in refusing, in an unreported decision, to approve broker's commissions on an earlier sale in the same rehabilitation proceeding, and by imputing an element of construction to an agreement between the trustee and the broker herein that in the event of sale to another bidder for the premises with which we are now concerned commissions would not be payable if the New Jersey Realty Company should take over. Those incidents related only to the specific instances in which they transpired. We attribute to them no controlling force over the present controversy.

The broker may or may not have an action at law. We have not considered that question. The order to which appellant objects was within the scope of General Order No. 2, which sets up the plan of up-set purchase upon which the appellant grounds its right to acquire title. The scheme and its conditions are interwoven in the same Chancery procedure and the trustee who sought and obtained the disputed order supports it here. The propriety of it is not affected by the existence or non-existence of a right on the part of the broker to sue at law.

We have stated our view that the authority of the court to command the payment of commissions was contained in General Order No. 2, not now under appeal. If we are to consider that the pertinent provisions of that order are to be read as part of the decree now before us for review, then we have it that appellant is in the inconsistent position of availing itself of a privilege which exists only by the grace of a court order and yet questioning the propriety of a condition which the order imposes upon the exercise of that privilege. The rule is that when a litigant accepts the benefit awarded him by a judgment or decree he is precluded from afterward challenging the validity of the conditions by an appeal. *Krauss* v. *Krauss, 74 N. J. Eq. 417.* Appellant has not yet accepted the benefit of the decree in the sense of actually paying the price and taking title. Nevertheless the appeal is fatuous unless appellant purposes to avail itself of the benefit if the condition upon which it rests be removed. If the condition is removed the benefit falls, because the two

are coupled; and that is something that appellant does not want.

Chancery had jurisdiction over the controversy and committed no error in the disposition of it.

The decree appealed from will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, WELLS, RAFFERTY, DILL, FREUND, JJ. 11.

*For reversal*—None.