CHARLES H. BARNEY *et al.*, *as Partners, etc., Appellees*, v. L. G. FERGUSON *et al., Appellants*.

No. 17,006.

SYLLABUS BY THE COURT.

ACTIONS AND REMEDIES — *Dismissal — Reinstatement — Judicial Discretion.* An action to foreclose a mechanic's lien was dismissed without prejudice. At the same term the attorney for the plaintiff filed a motion to set aside the order of dismissal and to reinstate the cause, on the ground that it had been dismissed under a mistake of fact. The defendant had notice and resisted, affidavits being filed for and against the motion. The principal grounds urged against the reinstatement went to the merits and the right of the plaintiff to maintain the

action. *Held*, that the application was addressed to the sound discretion of the court, that the court could not try the merits of the cause upon affidavits, and that its action in setting aside the dismissal and in reinstating the cause was in the further-ance of justice. .

Appeal from Wyandotte district court. Opinion filed April 8, 1911. Affirmed.

*James L. Hogin, T. F. Railsback,* and *Paul S. Con-well,* for the appellants.

*J. H. Luscombe, E. A. Enright,* and *U. A: Screech-field,* for the appellees.

The opinion of the court was delivered by

PORTER, J.: In June, 1907, the board of education of Kansas City, Kan., entered into a contract with L. G. Ferguson for the erection of a school building at an agreed price. The United Surety Company became surety for Ferguson for the payment of claims for labor and material furnished. Carruth and McVey were stonemasons, and as partners took a subcontract for furnishing labor and material for the foundation of the building. They purchased their material from Bar-ney & Roden. Ferguson defaulted in his payments, and, on October 2, 1907, Carruth and McVey went to the office of J. H. Luscombe, who was attorney for Barney & Roden, and had Luscombe prepare and file a lien statement in the name of Carruth. Carruth about that time went to southern Missouri and none of the interested parties knew where he was. On October 2, 1908, Luscombe brought this action in Carruth's name to foreclose the lien and to recover from the surety company. While the suit was pending the surety company sent an attorney to Missouri, and, on April 2, 1909, procured from Carruth an affidavit stating that he had the subcontract for the stone work individually; that he had completed about one-fourth of his contract and was forced to abandon it; that Ferguson had paid him

in full for labor and material used in the foundation; and that the action was brought without his knowledge or consent, and was wholly without merit. At the time this affidavit was made the surety company paid him the sum of $50 and took a receipt purporting to be in full payment of his claim for labor and material furnished under the contract. On April 9, 1909, Luscombe, attorney for the plaintiffs, heard of the existence of this affidavit and dismissed the action without prejudice. Thereafter, on May 6, and during the same term of court, he filed a motion to set aside the order of dismissal and reinstate the case on the ground that it had been dismissed under a misapprehension of facts. The defendants resisted the motion and numerous affidavits were filed. At the same term the court, after hearing the evidence, made a finding that the case had been dismissed under a mistake of fact, and ordered it reinstated. Thereafter, Barney & Roden procured from Carruth an assignment of his interest individually and as representing McVey in the contract with Ferguson, in which he stated under oath that the balance due from Ferguson for labor and material was $423.75. An amended petition was filed setting up the assignment. To this Ferguson and the surety company filed separate answers setting up the receipt obtained from Carruth, and alleged that the same was in full settlement of his claim against Ferguson. The case proceeded to trial and the jury returned a verdict for the plaintiffs, finding the balance due from the defendants to be $295.96. A motion for a new trial was denied, and the defendants appeal.

The principal contention is that the court erred in setting aside the dismissal and reinstating the case. It is conceded that a motion of this kind is addressed to the discretion of the court, and that such discretion will not be controlled unless manifestly abused. (*Flint v. Noyes,* 27 Kan. 351; *Stouffer v. Harlan,* ante, p. 307.) But it is seriously argued that the action of the court

in this instance was an abuse of discretion, because it was not in the furtherance of justice. It is somewhat difficult to grasp the defendants' notion of what the furtherance of justice means. Because on the trial they lost the case and feel that an injustice was done them it by no means follows that the action of the court in setting aside the dismissal was not in furtherance of justice. The situation is the same as though the plaintiff in an action upon a promissory note had dismissed without prejudice, and ten days thereafter, and at the same term, had asked to have the dismissal set aside and the action reinstated, and the defendant had resisted the application upon the sole ground that he had a defense to the merits of the action—had paid the note, not after the dismissal, but long before. Now, the court could not try the merits of such a case on affidavits; but in the furtherance of justice to both parties would reinstate the action unless there was some very good reason why that should not be done, and would set it down for trial, when the parties could present their evidence before a jury. So here, every ground urged against the reinstatement goes to the merits of the case and the right of the plaintiffs to maintain the action. The court could not try these issues of fact upon affidavits. It might have refused to reinstate on the ground that the plaintiffs could commence another action at any time within one year, since the dismissal was without prejudice; but how would this have benefited the defendants? If a new suit had been brought the same issues would have been raised. There is no pretence that pending the dismissal and reinstatement they acquired or lost any rights. They claim to have settled with Carruth before the case was dismissed, but they acquired no vested rights in the mere dismissal of the action without prejudice. The action of the court afforded both parties an opportunity to have the controversy determined upon its merits and was in the furtherance of justice. The

plaintiffs paid all costs that had accrued up to the time
the action was reinstated, and none of the defendants'
rights could have been prejudiced.   Courts frequently
set aside judgments on default at the same term at
which they are rendered and allow answers to be filed.
When the application is made at the same term it is
not necessary to follow the provisions of the code per-
mitting judgments to be opened up within three years.
(*Stouffer v. Harlan,* ante, p. 307.)   The language of the
court in *McCulloch v. Dodge,* 8 Kan. 476, seems to ap-
ply here:

"It simply opens up the judgment and the default,
and allows the said defendants to answer, so that the
merits of the action may be heard and considered, and
the case disposed of on its merits.   Courts will always,
as far as they can, favor rulings that will allow cases
to be disposed of on their merits, and will always, as
far as they can, discountenance every attempt to pre-
vent cases from being heard on their merits." (p. 479.)

It is claimed that a demurrer to the evidence should
have been sustained because there was no proof that
the amount sued for was unpaid.   It is conceded, how-
ever, that McVey testified to the amount he believed to
be due and unpaid.   He was a partner of Carruth, and
this was understood by all the parties in interest; his
name was originally in the contract.   It seems that Fer-
guson disliked him, and when the first bills were pre-
sented refused to pay them until his name was stricken
out, but paid some of the money on the contract to
McVey.   The fact that McVey testified from his recol-
lection as to what was due merely went to the weight
of his evidence.   It devolved upon the defendants to
produce evidence to show that the claim had been paid.
The demurrer was properly overruled.

The defendants requested an instruction to the effect
that, if the receipt was obtained from Carruth and
executed by him in consideration of the amount due
him from Ferguson, then the verdict should be for the
defendants.   There could be no question that it was

obtained from him, that it was executed by him and that it purported to be in consideration of what was due from Ferguson, and the instruction would practically have amounted to a peremptory instruction to find for the defendants. There was a real conflict in the evidence as to the circumstances under which the receipt was procured and what the actual consideration for it was. The court therefore properly instructed the jury that they might consider the various receipts executed by Carruth as evidence tending to show payment, but that they were not conclusive evidence of such payment and might be contradicted by oral testimony. The jury determined the issues in favor of the plaintiffs. The evidence was conflicting, but amply sufficient to sustain the verdict.

The judgment is affirmed.