No. 31,586

THE KANSAS CITY POWER AND LIGHT COMPANY, *Appellant*, v. THE CITY OF ELKHART, *Appellee*.

(31 P. 2d 62.)

Opinion filed April 7, 1934.

*Oscar F. Perkins*, of Elkhart, *William H. Lucas, Thad B. Landon* and *Ludwick Graves*, all of Kansas City, Mo., for the appellant.

*G. L. Light* and *Vincent G. Fleming*, both of Liberal, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from an order of the district court

of Morton county setting aside a default judgment against the city of Elkhart.

Briefly, the pertinent facts were these:

For some time past the Kansas City Power & Light Company had been supplying water and lighting services to the city of Elkhart. Following the enactment of the "cash-basis" law of 1933, the plaintiff power company presented bills to the city for alleged balances of accounts due for such services aggregating $2,529.50. These claims were disallowed by the city on May 15, 1933; plaintiff filed notice of appeal and the appeal papers were certified to the district court on May 19, 1933, for summary adjudication. The clerk of the district court did not understand how such matters should be handled and sought instructions from the presiding judge, and thereafter the appeal was docketed on June 6, 1933.

On June 5 plaintiff's local manager, for his own information and at the request of the mayor of the city, made inquiry of the clerk of the court and was advised that there was nothing on the docket. On June 12 the clerk of the court advised the plaintiff's manager that the matter was on the docket. On June 14, 1933, plaintiff employed an attorney to prosecute its appeal.

The following day, June 15, on inquiry, plaintiff's attorney ascertained that the regular presiding judge, Hon. F. O. Rindom, was then holding court in Garden City, about 100 miles from Richfield, the county seat of Morton county, and that his attendance in Richfield that day was impossible. Plaintiff's attorney notified the mayor of the city that the appealed claim would be called for disposition that day. The city's attorney resided at Liberal, about sixty miles away. The mayor talked with the city's attorney, who advised him that on such short notice, and because of the absence of the presiding judge, it would be impossible to adjudicate the matter that day. About noon, however, claimant's attorney telephoned certain lawyers residing in other towns and in neighboring counties to come to Richfield, the county seat, to elect a judge *pro tempore*. (There are only three lawyers in Morton county and none of these resides at the county seat.) Pursuant to this call five lawyers met at the courthouse and elected one of their number, A. E. Kramer, an attorney of Hugoton, as judge *pro tem*. Mr. Kramer took an oath of office, called the cause for trial, made a finding that judgment must be rendered not later than that day, and entered judgment in favor of plaintiff for the full amount of its two claims.

Four days later the city moved to vacate the foregoing proceedings and to set aside the judgment on various grounds—that the election of the judge *pro tem.* was a nullity, that the election was secretively and hastily conducted for the purpose of depriving the respondent city of a fair opportunity to defend against plaintiff's claim, and that the city had a just and meritorious defense thereto.

On July 24, 1933, the motion was argued before the regular presiding judge. His findings and conclusions, in part, read:

"The facts in the case were stipulated into the record and are accepted as the facts in the case; these facts show that the respondent has not been guilty of any negligence, but that claimant had, without justifiable excuse, failed to prosecute its appeal with reasonable diligence, and that the necessity for a substitute judge, if there was a necessity, was brought about by the negligence of the claimant. The application of claimant for the selection of a judge *pro tem.* filed in this case, shows that the selection was made solely for the trial of this case, which was not at issue at the beginning of the term. It is therefore my opinion that there were no proper grounds for the election of a judge *pro tem.* and that said proceeding was null and void, and that said judgment should be set aside and held for naught. It is further my opinion that the conduct of the claimant was such as to mislead the respondent; that to set the case down for trial on such short notice when respondent was unable to be present with counsel was grossly inequitable, and a judgment rendered under such conditions should be set aside."

Judgment was entered accordingly, and plaintiff appeals, contending that the election of a judge *pro tempore* was lawful, and that the court was without jurisdiction to vacate the proceedings had before the judge *pro tem.* and to set aside the judgment based thereon.

Considering the second point first, it is elementary that a court of law established for the administration of justice is not affected by changes in the personnel of its officials—its judges, clerks, bailiffs and barristers. Court officials come and go, but the institution remains. Rights of litigants in court are neither enhanced nor curtailed by a change of judges. When one judge vacates the bench, whether he is the regular judge, or *pro tempore,* or *pro hac vice,* his successor takes up and dispatches all pending judicial business, except where he may be disqualified because of interest in the litigation. (*Madden v. Glathart,* 115 Kan. 796, 224 Pac. 910.)

In *In re Day,* 129 Kan. 14, 18, 281 Pac. 865, it was said:

"The continued existence and identity of the court was not affected by a change of judges. The court does not resign or die and does not become defunct by the absence or change of its functionaries. The incoming judge had power to take up and dispose of unfinished business as fully as his predecessor could have done if there had been no change of judges."

Bearing in mind the familiar doctrine just stated, the propriety of the court considering and ruling on the city's motion to set aside the proceedings of June 15 and the judgment based thereon becomes perfectly clear. The city's motion was timely filed. It was pending and undetermined. The regular presiding judge was not disqualified because of interest; consequently it was his duty to hear the motion and decide it. It was a duty he could not escape. (*Golden v. Mitchell*, 107 Kan. 1, 190 Pac. 786.) Moreover, under the circumstances narrated above it was more than discretionary, it was imperative that the proceedings and judgment of June 15 should be set aside if justice was not to be miscarried. The city had not had a fair chance to present its defense. It had no timely information that a judge would be available to hear the appeal, and all the circumstances tended to show the contrary. In *Burnham v. Burnham*, 120 Kan. 90, 242 Pac. 124, it was held that within the same term at which a judgment is rendered the trial court has absolute power over it, and may modify, alter, change or vacate it in whole or in part; and the same rule of trial practice prevails, although a later term may have begun ere such ruling is made if such ruling was timely invoked during the term in which the judgment was rendered. In *Barney v. Ferguson*, 84 Kan. 587, 114 Pac. 1055, where a ruling of a trial court reinstating a cause which had been dismissed was under review, this court quoted from the early case of *McCulloch v. Dodge*, 8 Kan. 476, in part thus:

"Courts will always, as far as they can, favor rulings that will allow cases to be disposed of on their merits, and always will, as far as they can, discountenance every attempt to prevent cases from being heard on their merits."

It seems clear that the trial court was well within its discretionary jurisdiction when it sustained the defendant's motion; and the question of the regularity of the election of a judge *pro tem.* on June 15 need not be determined.

Plaintiff also assigns error on the reception of evidence. Such evidence as was introduced in support of the motion to vacate and set aside was dictated into the record by counsel for the parties, subject to questions of its competency, but we discern no infirmity in it. Counsel for appellant say the evidence had the effect of a collateral attack on the proceedings of June 15. By no means. Defendant's motion made a direct and specific attack on those proceedings, and it was filed and pressed in the identical case in which the proceedings complained of had transpired. (*Crawford County*

*Comm'rs v. Radley et al.,* 134 Kan. 704, 8 P. 2d 386; 34 C. J. 511, 520; 15 R. C. L. 838, 839.) And see Hatcher's Dig. "Judgments," §§ 242-267.

Plaintiff also objects to the trial court's conclusion of law and fact, which was that it was not diligently prosecuting its appealed claim, which fact maneuvered the city into the situation which caused its failure to appear and present its defense, and which caused the necessity, if there was a necessity, for a judge *pro hac vice.* We think that finding and conclusion were eminently justified by the record and the circumstances.

The question whether the order setting aside the proceedings and vacating the judgment constitutes an appealable order is not presented. But see *McCullough v. Dodge,* 8 Kan. 476. At all events the record reveals no error, and the trial court's ruling is therefore affirmed.