140 N.J. Super. 517 (1976)
357 A.2d 10
MARGARET TASSIE, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
JOHN M. TASSIE, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1976.
Decided April 7, 1976.
*519 Before Judges HALPERN, CRANE and MICHELS.
Mrs. Regina H. Meredith argued the cause for appellant and cross-respondent (Messrs. Meredith, Meredith & Chase, attorneys; Mr. Edward B. Meredith on the brief).
Mr. Stephen F. Lichtenstein argued the cause for respondent and cross-appellant (Messrs. Coleman, Lichtenstein, Levy & Segal, attorneys; Mr. Stuart B. Dember, on the brief).
The opinion of the court was delivered by MICHELS, J.A.D.
Plaintiff Margaret Tassie appeals and defendant John M. Tassie cross-appeals from portions of a final judgment of the Chancery Division entered in this matrimonial action.
Plaintiff and defendant were married for almost 30 years when defendant left the marital residence and deserted plaintiff. During their marriage eight children were born to plaintiff and at the time of trial seven of them were living. Three of these children were minors and living at home with plaintiff. Defendant is a highly successful corporate executive. During the period from 1960 to and including 1971 his salary and the capital gains obtained upon the exercise of stock options provided by his employer exceeded $100,000 a year. In fact, in 1965 his gross income from all sources, including investments, was $810,135. Defendant had a net worth of approximately $2,500,000. Defendant and his family enjoyed a very high standard of living. Plaintiff and defendant lived in a large house in the Township of Lawrence situated on two tracts of land consisting of approximately 21 acres. Their house was attended over the years by live-in servants and gardeners, and plaintiff *520 had a secretary to attend to her personal affairs. The family enjoyed many other benefits that defendant's income and wealth were able to provide, including private schools for the children, numerous trips and memberships in such private clubs as The Bedens Brook Club in Skillman, New Jersey, and the Bay Head Yacht Club in Bay Head, New Jersey.
In January 1970 defendant deserted plaintiff. In June of that year plaintiff filed a complaint against defendant based on the ground of extreme cruelty, and sought separate maintenance for herself, support and custody of the children born of their marriage, an accounting and equitable division of their assets, and a restraint enjoining defendant from disposing of any of them. Defendant filed an answer denying generally the allegations of the complaint, and counterclaimed for the return of $350,000 in bearer bonds owned by him and which he charged plaintiff unlawfully removed from his safe deposit box, and for a restraint enjoining plaintiff from disposing of these bonds. Plaintiff subsequently amended the complaint to seek an absolute divorce based on extreme cruelty and desertion and sought alimony for herself, support for and custody of their minor children, an accounting and equitable distribution of the marital property, and counsel fees and costs. Defendant filed an answer again denying generally the allegations of the complaint, and counterclaimed for divorce on the ground of extreme cruelty. He also continued to counterclaim for return of the $350,000 in bearer bonds taken by plaintiff, together with the interest paid to her thereon.
A lengthy trial was held in which most of the evidence was directed to the issues of alimony, support and equitable distribution of the marital property. At the conclusion thereof Judge O'Donnell, in a carefully reasoned opinion dated January 26, 1973 which was clarified by a supplemental opinion dated April 2, 1973, found that defendant had deserted plaintiff and was guilty of extreme cruelty, and he granted plaintiff a divorce on both grounds. The *521 judge further found that defendant had failed to establish any grounds for divorce and, in fact, had abandoned his counterclaim for divorce, and dismissed the counterclaim. Custody of the minor children was awarded to plaintiff with liberal visitation rights to be agreed upon by plaintiff and defendant.
With respect to the financial aspects of the divorce, the judge held that alimony and the distribution of the marital property were interdependent and could not be separated since the award of alimony was dependent upon the nature and quantity of the property to be divided. The judge made a distribution of the marital property in such a manner that plaintiff received property having an aggregate value of approximately $1,000,000 which provided her with an annual tax-free income of approximately, but not less than, $42,432. The judge also required defendant, among other things, to contribute to the college and graduate education of the minor children, provide certain medical-surgical insurance coverage for them, and be responsible for a portion of their extraordinary medical and dental expenses. The judge ordered that
(1) defendant was to transfer to plaintiff tax-free municipal bonds having a face value at maturity of $705,000 and a present market value of $741,200, together with interest paid on said bonds since January 1, 1973. (The judge also ordered that defendant replace the $75,000 New York City bond that had matured with another bond in the same face amount with the highest interest available so that the income from the replacement bond, together with the income from the other bonds, would yield a total annual tax-free income to plaintiff of not less than $42,432);
(2) defendant was to transfer to plaintiff title to the marital residence and the 15.5 acre tract of land on which the residence was situated (which was appraised at approximately $183,000);
(3) all furnishings and equipment in the marital residence (which had an appraised value of $82,360) were to remain the sole property of plaintiff, and defendant was to execute appropriate instruments reflecting her ownership;
(4) defendant was to transfer to plaintiff membership in The Bedens Brook Club and the Bay Head Yacht Club and to pay the annual dues for these clubs until their youngest child graduated from or ceased to attend college;
*522 (5) defendant was to pay all reasonable costs of education of the minor children over and above the following amounts: $2,100 for Sara, $2,100 for Gina and $1,665 for Sue. (The costs of education were to include all school charges, including books, room and board, activities, and laboratory and application fees, and the obligation was to continue through completion of college or its equivalent and graduate school);
(6) defendant was to pay the outstanding bills of Bergdorf Goodman and Bloomingdale's incurred by plaintiff in 1972;
(7) defendant was to be responsible for all future extraordinary medical and dental expenses for the minor children in excess of $558 a year;
(8) defendant was to transfer to plaintiff the Chrysler station wagon;
(9) defendant was to provide Blue-Cross  Blue Shield and Major Medical coverage, or its equivalent, for Sara, Gina and Sue so long as that coverage was available to defendant through his employer and until each child had completed her education;
(10) defendant was to pay plaintiff's attorneys a fee of $15,000 and costs of $7,567.10 (in addition to the attorneys' fee of $2,500 previously awarded pendente lite).
The trial judge held that the payment of the annual club dues and education expenses constituted alimony payable by defendant to plaintiff and ordered defendant to pay plaintiff any additional amounts required to be paid by her as taxes resulting from the payment of these expenses as alimony.
The judge also held that the bearer bonds which plaintiff removed from the safe-deposit box were not a gift from defendant and ordered her to return to him all such bonds presently in her possession and which were not to be transferred to her pursuant to the foregoing distribution of the marital property. The judge, however, did not require plaintiff to account for the income she received from those bonds. Plaintiff was also required to transfer to defendant the six-acre parcel of land across a private road from the residence awarded to her, and she was given the right of first refusal to purchase the parcel so long as she remained in the residence.
Judgment was entered on May 25, 1973. On June 4, 1973 plaintiff and defendant and their attorneys met at the First *523 National Bank of Princeton in Princeton, New Jersey, to transfer possession and ownership of the marital property pursuant to the judgment. Defendant delivered to plaintiff in the presence of her attorney the bearer bonds, a deed for the marital residence and the approximately 15.5 acres of land on which it was situated, a membership certificate in The Bedens Brook Club, an endorsed certificate of ownership for the Chrysler station wagon, a properly executed agreement granting plaintiff the right of first refusal to purchase the remaining six-acre tract awarded to him, a check in the amount of $15,000 in partial payment of the counsel fees and costs awarded plaintiff, and $2,000 to provide plaintiff with funds for the period of time when the income from the bonds awarded to her might be insufficient to sustain her because of certain credits allowed defendant by the trial judge. Plaintiff, in turn, delivered to defendant a deed for the six-acre tract and municipal bonds having a face amount aggregating $225,000 which the trial judge had held to be the property of defendant. Apparently some of the bonds ordered to be returned to defendant had matured and the principal thereof collected by plaintiff, as a result of which plaintiff gave defendant her check for $49,972.36. Appropriate receipts reflecting the transfer of the property were signed by plaintiff and defendant.
The following day, June 5, 1973, plaintiff served her notice of appeal from certain financial aspects of the final judgment, specifically, the equitable distribution of the marital property, alimony and support for plaintiff and the minor children, allowance of credits to defendant and adequacy of the award of counsel fees and costs. Defendant immediately moved to dismiss the appeal for the reason that plaintiff had accepted the benefits of the entire judgment and therefore was barred and estopped from attacking it. We denied the motion without prejudice to defendant to raise these issues by way of defense to the appeal or by cross-appeal. Defendant cross-appealed from portions of the final judgment, including the equitable distribution of the marital *524 property, payment of club dues and education costs and the allowance of counsel fees and costs to plaintiff.[1]
Plaintiff contends that the judgment should be reversed and the matter remanded to the trial court because (1) the trial judge erroneously excluded from the family assets defendant's inheritance, his partnership interest in Conoco, Limited, and the value of his pension fund and stock options; (2) the judge failed to award her support and alimony; (3) the distribution allegedly of 28% of the marital assets to her and 72% to defendant was manifestly inequitable and constituted an abuse of discretion by the trial judge; (4) the judge erred by refusing to order pretrial depositions of defendant, and (5) the judge failed to make an adequate allowance of counsel fees and costs. We must first consider and decide whether plaintiff has waived her right to and is estopped from taking this appeal by reason of her voluntary acceptance of the benefits of the judgment before we reach the other issues raised by plaintiff and defendant.
It is a well recognized rule that a litigant who voluntarily accepts the benefits of a judgment is estopped from attacking it on appeal. See In re Mortgage Guaranty Corp., etc., Act, 137 N.J. Eq. 193, 198 (E. & A. 1945); Krauss v. Krauss, 74 N.J. Eq. 417, 421 (E. & A. 1908); 4 Am. Jur.2d, Appeal and Error, § 250 at 745-746; 4 C.J.S. Appeal & Error § 215 at 644-646; Annotation, "Right to appeal from judgment as affected by acceptance of benefit *525 thereunder  federal cases," 5 L.Ed.2d 889, 890-891 (1961); Annotation, "Right of appeal from judgment or decree as affected by acceptance of benefit thereunder," 169 A.L.R. 985, 989-990 (1947).
* * * If the party in whose favor a judgment is rendered receives payment thereof * * * he probably estops himself from taking an appeal from such judgment, or from further prosecuting an appeal previously taken, on the principle that one will not be permitted to accept and retain the fruits of a judgment and at the same time to insist that it is erroneous. * * * [2 Freeman, Judgments (5 ed. 1925), § 1165 at 2406-2407]
But cf. Adolph Gottscho, Inc., v. American Marking Corp., 26 N.J. 229, 242 (1958); Beronio v. Hoboken Pension Comm'n, 130 N.J.L. 620, 622 (E. & A. 1943).
The rule that a litigant cannot seek appellate review of a judgment under which he has accepted a benefit is but a corollary to the established principle that any act upon the part of a litigant by which he expressly or impliedly recognizes the validity of a judgment operates as a waiver or surrender of his right to appeal therefrom. Sturdivant v. General Brass & Machine Corp., 115 N.J. Super. 224, 227-228 (App. Div. 1971), certif. den. 59 N.J. 363 (1971). See 4 Am. Jur.2d, Appeal and Error, § 242 at 737; 4 C.J.S. Appeal & Error § 212 at 617, 627. See also, Annotation, "Defeated party's payment or satisfaction of, or other compliance with, civil judgment as barring his right to appeal," 39 A.L.R.2d 153 (1955).
Plaintiff knowingly and voluntarily accepted all of the benefits of the judgment without reserving her right to appeal by accepting them under protest. Such acceptance of the benefits (and plaintiff's compliance with the financial obligations imposed upon her thereby) at a time when she had the benefit of able and experienced counsel, clearly constituted a recognition of the validity of the judgment and manifested an intent to be bound by it and operated as a waiver or surrender of her right to appeal therefrom. The acceptance of the benefits of the judgment is inconsistent with a claim that the judgment is erroneous. More importantly, *526 in the circumstances here present, it is inequitable and unjust to permit plaintiff to accept the benefits and attack the judgment on appeal.
While we have not found any reported decision in this State applying this principle in the context of a divorce action, there are many cases throughout the country that have applied the principle in such actions. For example, in Stein v. Stein, 83 U.S. App. D.C. 286, 170 F.2d 162 (1948), the court dismissed an appeal from a divorce decree where appellant wife accepted the monthly alimony payments and counsel fees awarded thereunder, stating:
In Harris v. Harris, 1937, 67 App. D.C. 85, 89 F.2d 829, on facts parallelling those in the instant case so far as the right to appeal is concerned, we held that the appeal must be dismissed. We said: "It is held by the authorities without exception, so far as we can discover, `where a divorce is granted against the wife to whom an award of alimony is made, that, by accepting the alimony, she is precluded from taking and prosecuting an appeal from the decree of divorce.' 2 Am. Jur. § 219, p. 981." (67 App. D.C. at page 86, 89 F.2d at page 830). We cited numerous additional authorities supporting this view and said further that "This ruling does not leave the wife helpless if because of destitute circumstances she is entitled to be maintained during the period she seeks to exercise her right of appeal. It is within her power to refuse to accept the alimony awarded her and to apply to the trial court for an allowance of alimony and suit money to enable her to prosecute her appeal, and in the event of a denial of her application by the lower court she may seek such relief in this court. Morgan v. Morgan, 25 App. D.C. 389; Bernsdorff v. Bernsdorff, 26 App. D.C. 228; Lane v. Lane, 26 App. D.C. 235, 6 Ann. Cas. 683. However, instead of doing this appellant elected to accept the benefits of the decree in question and at the same time to challenge its correctness by an appeal. This she cannot do." [67 App. D.C. at 87, 89 F.2d at 831]
Similarly, in Sidebottom v. Sidebottom, 249 Ind. 572, 233 N.E.2d 667 (Sup. Ct. 1968), the court dismissed an appeal from a divorce decree by appellant husband who took possession of the personal property awarded to him thereunder and sold a part of the property, retaining the proceeds from the sale. The court held that such conduct estopped the husband from pursuing the appeal, stating:
*527 The overwhelming weight of authority is to the effect that an appellant having recognized the validity of a judgment and decree of divorce rendered in a court of competent jurisdiction and having jurisdiction of the persons by accepting the favorable and/or beneficial provisions thereof, financial and/or marital, accruing to him thereunder, in the absence of fraud, is estopped from questioning the validity of such judgment or decree from and after the acceptance of such benefit or benefits. From and after such acceptance, an appellant is prohibited from proceeding to perfect or maintain any appeal from the same. [233 N.E.2d 672]
See also, Peters v. Peters, 175 Kan. 422, 263 P.2d 1019, 1020 (Sup. Ct. 1953); Moffett v. Moffett, 142 Kan. 9, 45 P. 2d 579, 581 (Sup. Ct. 1935); Swearingen v. Swearingen, 487 S.W.2d 784, 788 (Tex. Ct. Civ. App. 1972); Wilson v. Wilson, 159 Cal. App.2d 330, 323 P.2d 1017, 1019-1020 (D. Ct. App. 1958); Smith v. Smith, 125 Ind. App. 658, 129 N.E.2d 374, 375-376 (App. Ct. 1955); Harris v. Harris, 67 App. D.C. 85, 89 F.2d 829, 830-831 (1937); Gerbig v. Gerbig, 60 Nev. 292, 108 P.2d 317, 318 (Sup. Ct. 1940); Annotation, supra, 169 A.L.R. at 999; 4 Am. Jur.2d, Appeal and Error, § 259 at 754.
While this rule is not absolute and is subject to certain exceptions (see McIlroy v. McIlroy, 191 Ark. 45, 83 S.W.2d 550, 551 (Sup. Ct. 1935); Hofer v. Hofer, 244 Or. 88, 415 P.2d 753, 756 (Sup. Ct. 1966); Kassebaum v. Kassebaum, 178 Neb. 812, 135 N.W.2d 704, 705 (Sup. Ct. 1965); O'Connor v. O'Connor, 253 Ind. 295, 253 N.E.2d 250, 251-252 (Sup. Ct. 1970); Knebel v. Knebel, 189 S.W.2d 464, 466-467 (Mo. Ct. App. 1945); Beaton v. Beaton, 99 N.W.2d 92, 93-94 (N.D. Sup. Ct. 1959)), we are convinced that none of these exceptions bar its application here. Plaintiff was not destitute, and had ample financial resources to maintain herself and the minor children during the pendency of this appeal. Her resources were also sufficient to prosecute this appeal, as they were to prosecute her separate maintenance and divorce actions. It must be remembered that plaintiff was not threatened with eviction from the marital residence or loss of support during this action. She *528 also had the use of the income from the bonds she removed from defendant's safedeposit box, and even had sufficient cash to pay defendant $49,972.36 for the bonds which had matured. Additionally, plaintiff did not merely accept the benefits of a judgment to which she admittedly was entitled or concerning which there was no dispute. On the contrary, defendant contested the equitable distribution of the marital property, the payment of the club dues and education costs, in addition to the transfer of the bearer bonds and the allowance of counsel fees and costs.
Entirely apart from the fact that the appeal must be dismissed by reason of plaintiff's voluntary acceptance of the benefits of the judgment under review, we are satisfied from our study of the entire record, including the lengthy trial testimony and voluminous exhibits, that there was ample evidential support for the findings and conclusions of the trial judge concerning the financial aspects of the judgment, and we discern no good reason or justification for disturbing them. Furthermore, even though the judge may have been incorrect in failing to include as marital property subject to equitable distribution under N.J.S.A. 2A:34-23 approximately $70,000 which represented the proceeds from defendant's inheritance (see Painter v. Painter, 65 N.J. 196, 215 (1974)), the value of his partnership interest in Conoco Exploration, Ltd. (the value of which was questionable but which provided defendant with a tax loss of $10,034.09 in 1971), and $46,534.77 contributed by defendant to his corporate pension plan (see Pellegrino v. Pellegrino, 134 N.J. Super. 512, 516 (App. Div. 1975)), we are also satisfied that the equitable distribution of the marital property was fair and reasonable. The aggregate value of this property is relatively insignificant when viewed in the light of the total value of the marital property of approximately $2,500,000, and the failure to consider this property could not appreciably affect the distribution made by the trial judge and did not render it inequitable.
*529 Accordingly, plaintiff's appeal from the judgment of the Chancery Division is dismissed. No counsel fees or costs are allowed on this appeal.
NOTES
[1] Defendant has abandoned his attack on the constitutionality of the equitable distribution provisions of N.J.S.A. 2A:34-23 and the retroactive application thereof in view of recent Supreme Court decisions in Painter v. Painter, 65 N.J. 196 (1974), and Rothman v. Rothman, 65 N.J. 219 (1974). In the event that the judgment is affirmed, defendant also abandons all of the issues raised on the cross-appeal, including his claim that the trial judge erred (1) by equitably distributing property acquired by him after the separate maintenance suit was instituted, and (2) in failing to order plaintiff to account for and turn over to him the income received from the bearer bonds she illegally took from his safe-deposit box.