688 A.2d 636

HUI MEI HUNG CHEN, PLAINTIFF–RESPONDENT/CROSS–APPELLANT, v. MICHAEL CHEN, A/K/A YIH–TZUN CHEN, DEFENDANT–APPELLANT/CROSS–RESPONDENT, AND ANNIE MU–EN CHEN, SCOTT KUAN–CHI CHEN, AND BEN HONG BIN CHEN, INTERVENORS/CROSS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 23, 1997—Decided February 14, 1997.

Before Judges SHEBELL, BAIME, and BRAITHWAITE.

*Vincent P. Celli* argued the cause for appellant (*Mr. Celli*, attorney, and on the brief; *Shivaun M. McConnell*, on the brief).

*Thaddeus R. Maciag* argued the cause for respondent (*Maciag & Associates*, attorneys; *Mr. Maciag*, of counsel and on the brief; *Karen Cornyn Formisano*, on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

This appeal and cross-appeal arise out of a judgment of the Family Part confirming certain aspects of an arbitrator's decision and modifying others. We are satisfied that the arbitrator "imperfectly exercised [her] powers" and that the Family Part erred by failing to vacate the award. *N.J.S.A.* 2A:24–8.

## I.

Plaintiff Hui Mei Chen and defendant Michael Chen, both citizens of Taiwan, were married in 1964. During the marriage, plaintiff resided in New Jersey, and defendant continued to live in Taiwan while making monthly visits here. In 1991, plaintiff filed a complaint for divorce in the Family Part. After defendant filed his answer, the parties' three children—Annie Mu–En Chen, Scott Kuan–Chi Chen, and Ben Hong Bin Chen—intervened.

While the action was pending, defendant commenced legal proceedings in Taiwan, seeking to obtain title to an extensive parcel of unimproved real property located in Kaohsiung province. Plaintiff had conveyed title to the property to her relative, Lin You. Prior to the conveyance, plaintiff had held title in her own name. However, defendant contended that he shared in ownership of the property and that the conveyance to Lin You was

intended to insulate the asset from the reach of his creditors. Defendant sought to invalidate the conveyance to Lin You and "restore" title to him and the plaintiff.

While the action in Taiwan was pending, plaintiff and defendant entered into a written arbitration agreement. The agreement provided that "[a]ll issues" were to be submitted to the arbitrator, that no question was "reserved," and that New Jersey's substantive law was to apply. In accordance with the parties' agreement, the Family Part issued a consent order which stated that "[t]he matter shall be submitted to binding arbitration in regard to all issues."

Neither the arbitration agreement nor the consent order made reference to the litigation pending in Taiwan. However, the subject was raised in correspondence between counsel and in the course of various proceedings in the Family Part. In letters between the attorneys, it was agreed that the Taiwan courts would decide the "title" to the Kaohsiung property, but the issue of equitable distribution would "revert to the trier of fact in this jurisdiction." Despite the disarming ease with which the agreement was phrased, substantial controversy continues to be generated concerning the meaning of this stipulation. According to plaintiff, the agreement envisioned that if the Taiwan court were to conclude that she had sole title to the property and that her conveyance to Lin You was valid, the arbitrator would be bound by that determination and could not consider the land as a marital asset. According to defendant's interpretation, the Taiwan court was to determine only the question of title and the arbitrator could nevertheless decide that the property was a marital asset subject to equitable distribution, even if the parcel was owned solely by the plaintiff. We will return to this issue later in our opinion.

The Taiwan High Court determined that, although the Kaohsiung property was purchased during the parties' marriage, it belonged solely to plaintiff. The Court found that prior to the marriage, plaintiff had used her earnings as a nurse to purchase other property, that this other property was subsequently sold,

and that the proceeds, together with a loan from plaintiff's father, were devoted to the purchase of the Kaohsiung parcel. Unfortunately, the Court's opinion respecting the validity of plaintiff's conveyance of the Kaohsiung property to Lin You is not altogether clear. The opinion recites that Mr. Chen was involved in a financial "scandal" and, as a personal guarantor for Cathay Plastics Corporation, became indebted to the company's creditors in the amount of NT $85 million. Plaintiff, defendant, and Lin You were said to have "collaborated [in a] fake transaction" to transfer the land to Lin You to avoid the claims of defendant's creditors. The transcription appearing in the record seems to indicate that the reference to a "fake transaction" was part of the Court's description of defendant's allegations, and was not one of the Court's actual findings. Although this point is indeed murky, it is plain from our reading of the opinion that the Court found the conveyance from plaintiff to Lin You to be valid and not subject to challenge by the defendant. The Court added that the property was purchased with plaintiff's "hard earned money," that it was not part of the "matrimonial property regime under [the Taiwan] [c]ivil [c]ode," and that plaintiff had the absolute right to convey the parcel to Lin You.

The Taiwan Supreme Court affirmed the Taiwan High Court's judgment, upholding the finding that "the funds used to buy the land were [provided by plaintiff through] her hard work, gift money and borrowing." The Taiwan Supreme Court also sustained the finding that the Kaohsiung parcel was plaintiff's "exclusive propert[y] and [was] not under [the parties'] marital property regime[ ], though purchased after [the commencement of the] marriage." The Taiwan Supreme Court refused to consider defendant's argument that Mrs. Chen's conveyance of the Kaohsiung property to Lin You was designed to defraud creditors and should be invalidated, noting that defendant lacked standing to raise that issue.

Pursuant to the parties' agreement, arbitration proceedings were commenced in New Jersey in July 1994. Under the parties'

stipulation, the decision of the Taiwan High Court was marked as an exhibit and admitted in evidence to be "afforded the appropriate weight by the Arbitrator." The decision of the Taiwan Supreme Court was rendered after the arbitrator issued her decision. The record does not disclose exactly what instructions the arbitrator received with respect to whether, or to what extent, the Taiwan High Court's decision regarding title to the Kaohsiung property was to be considered binding.

The arbitrator issued her written determination on August 5, 1994. In listing the documents that had been admitted into evidence, the arbitrator referred to the decision of the Taiwan High Court. However, no further reference was made to the decision in the arbitrator's extensive written determination pertaining to the issues of alimony, support and equitable distribution. In her decision, the arbitrator described in some detail a labyrinth of tangled conveyances and transactions between the parties and their children. For example, the parties had purchased an expensive condominium complex in Taipei for investment purposes. Title was placed in plaintiff's name. According to the arbitrator, plaintiff had then transferred title of the property to Mu–En Chen to insulate it from the reach of defendant's creditors. The arbitrator found, however, that the property was actually owned jointly by the parties. The arbitrator ordered that the property be sold and that the proceeds divided equally between plaintiff and defendant.

The arbitrator made similar findings respecting the Kaohsiung property. More specifically, the arbitrator rejected plaintiff's contention that the Kaohsiung property had been purchased using plaintiff's premarital earnings. The arbitrator found, instead, that the parties had purchased the parcel with funds borrowed from plaintiff's family, but had repaid most of the loan. Although plaintiff had held title in her name prior to her conveyance of the property to Lin You, the arbitrator determined that it was a joint marital asset. Consistent with her finding that the parties' properties had been conveyed to relatives to be held in trust and later

returned, the arbitrator ordered plaintiff to "effect the transfer" of the Kaohsiung property from Lin You. Under the arbitrator's decision, the property is to be sold and the proceeds divided equally between plaintiff and defendant.

Plaintiff moved to vacate or modify the arbitration award. She argued (1) the Kaohsiung property should have been excluded from equitable distribution based upon the decisions of the Taiwan courts, (2) the Taipei condominium should not have been considered a marital asset subject to equitable distribution, and (3) she should have been credited with payments made to defendant's attorneys. Defendant filed a cross-motion to confirm the arbitration award.

The Family Part found no basis to modify the arbitrator's decision with respect to the Taipei condominium complex. While noting that plaintiff conveyed the Taipei condominium to Mu–En in 1982, and not in 1992 as stated in the arbitrator's decision, the court found that this was a mere typographical error having no bearing on the proper disposition of the property. The Family Part also rejected plaintiff's claim that she was entitled to credits for payments made to defendant's lawyers. The court observed that plaintiff had failed to present this claim to the arbitrator, and that no evidence had been presented on the issue.

The Family Part was obviously perplexed by the arbitrator's failure to explain the effect of the Taiwan courts' decisions on her disposition of questions relating to the Kaohsiung property. The court thus directed the arbitrator to indicate "what weight [she] gave" to the decision of the Taiwan High Court, and whether her findings would have been different had she the benefit of the opinion of the Taiwan Supreme Court. The arbitrator responded that she had experienced difficulty in "comprehending" the transcriptions of these decisions. Because it was unclear whether the Taiwan courts had based their decisions on live testimony rather than documentary submissions, the arbitrator added that she "did not give significant weight to the Taiwanese decisions." The gist of the arbitrator's response was that she did not consider the

decisions of the Taiwan courts because she found those judicial pronouncements to be unreliable.

Upon receiving the arbitrator's reply, the Family Part attempted to clarify whether or not the parties had appeared and testified in the Taiwan proceedings. Both parties initially claimed that they had not testified. They subsequently represented that they had given live testimony.

Equally unavailing was the Family Part's attempt to determine whether, or to what extent, the parties in their agreement intended to be bound by the decisions of the Taiwan courts respecting the disposition of the Kaohsiung property. Although no testimony or other evidence was presented on the subject, plaintiff represented that the parties agreed to be bound by the decisions of the Taiwan courts, and defendant represented that these decisions were to be binding only with respect to the question of title. Citing conflicting representations on the subject by counsel in the course of the proceedings, the Family Part stressed that it had delayed the trial for nearly two years while the proceedings were pending in the Taiwan courts. The Family Part concluded that the parties had agreed to be bound by the decisions of the Taiwan courts both with respect to title to the Kaohsiung property and to its eligibility for equitable distribution. The court added that the arbitrator's order requiring plaintiff to "effect the transfer of the property held by a third party to her" was unenforceable. The court thus vacated the Kaohsiung property from equitable distribution and modified the arbitrator's decision accordingly.

In the principal appeal, defendant requests that we reverse the Family Part's judgment and *essentially* reinstate the arbitrator's decision. We have underscored the word "essentially" because we are told that Lin You has sold the Kaohsiung property for approximately NT $7,000,000. While the record is silent respecting whether plaintiff or her family has received any part of the proceeds of the sale, defendant asks us to order plaintiff to produce the monies so that they can be divided equally or to recast the equitable distribution scheme to reflect plaintiff's im-

proper conveyance of the property to Lin You. In the cross-appeal, plaintiff and the intervenors contend that the Family Part erred by confirming that part of the arbitrator's decision that includes the Taipei condominium as a marital asset subject to equitable distribution. Plaintiff also contends that the Family Part erred by refusing to award her credits for payments she allegedly made to defendant's attorneys.

## II.

We are convinced that the arbitrator "imperfectly exercised [her] powers" and that the Family Part was thus obliged to vacate the arbitration award under *N.J.S.A.* 2A:24–8d. In reaching this conclusion, we recognize that the standard for interfering with an arbitrator's decision has been narrowed dramatically by our Supreme Court's holding in *Tretina Printing, Inc. v. Fitzpatrick & Associates, Inc.*, 135 *N.J.* 349, 357–58, 640 *A.2d* 788 (1994). Under prior law, section d of the statute had been interpreted by a plurality of the Court as permitting judicial intervention in order "to safeguard against interpretive error that [could] be characterized on its face as gross, unmistakable, undebatable, or in manifest disregard of the applicable law and leading to an unjust result." *Perini Corp. v. Greate Bay Hotel & Casino, Inc.*, 129 *N.J.* 479, 496, 610 *A.2d* 364 (1992). In *Tretina*, the Court adopted Chief Justice Wilentz's view.

> Basically, arbitration awards may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators. [They] can be corrected or modified only for very specifically defined mistakes as set forth in [*N.J.S.A.* 2A:24–9]. If the arbitrators decide a matter not even submitted to them, that matter can be excluded from the award. For those who think the parties are entitled to a greater share of justice, and that such justice exists only in the care of the court, I would hold that the parties are free to expand the scope of judicial review by providing for such expansion in their contract; that they may, for example, specifically provide that the arbitrators shall render their decision only in conformance with New Jersey law, and that such awards may be reversed either for mere errors of New Jersey law, substantial errors, or gross errors of New Jersey law and define herein what they mean by that. I doubt if many will. And if they do, they should abandon arbitration and go directly to the law courts.
>
> [135 *N.J.* at 358 (quoting *Perini Corp. v. Greate Bay Hotel & Casino, Inc.*, 129 *N.J.* at 548–49, 610 *A.2d* 364 (Wilentz, C.J., concurring)).]

The narrow standard we apply in these cases rests in part upon our "enthusiastic" acceptance of alternatives to conventional courtroom dispute resolution, *see Stigliano v. St. Rose High School,* 198 *N.J.Super.* 520, 529, 487 *A.*2d 1260 (App.Div.1984), and in our recognition of the fact that it was the arbitrator's decision for which the parties bargained, and not that of a reviewing court. *Id.* at 530, 487 *A.*2d 1260.

Our Supreme Court has applied these principles in the context of marital litigation. *Faherty v. Faherty,* 97 *N.J.* 99, 477 *A.*2d 1257 (1984). The Court has said that "the advantages of arbitration of domestic disputes include reduced court congestion, the opportunity for resolution of sensitive matters in a private and informal forum, reduction of the trauma and anxiety of marital litigation, minimization of the intense polarization of parties that often occurs, and the ability to choose the arbitrator." *Id.* at 107–08, 477 *A.*2d 1257. Under New Jersey law, parties may bind themselves to arbitrate disputes over the financial aspects of a divorce, and an arbitrator's award is subject to the review standards provided in *N.J.S.A.* 2A:24–8. *Id.* at 108, 477 *A.*2d 1257. In embracing arbitration in all phases of matrimonial disputes, the Court has expressed the view that "the parties should be granted as much autonomy as possible in the [re]ordering of their personal lives." *Id.* at 107, 477 *A.*2d 1257.

An arbitrator's jurisdiction thus hinges upon "what the ... parties to the contract have agreed should be submitted to arbitration." *Laborers' Local Union v. Interstate Curb & Sidewalk,* 90 *N.J.* 456, 463, 448 *A.*2d 980 (1982). Our Supreme Court has observed that "[i]n the absence of a consensual understanding, neither party is entitled to force the other to arbitrate their dispute." *In re Arbitration Between Grover & Universal Underwriters Ins. Co.,* 80 *N.J.* 221, 228, 403 *A.*2d 448 (1979). "[W]here an arbitration award does not draw its essence from the bargaining agreement[,] it will not be enforced by the courts." *Belardinelli v. Werner Continental, Inc.,* 128 *N.J.Super.* 1, 7, 318 *A.*2d 777 (App.Div.1974); *see also United Steelworkers v. Enterprise*

*Wheel & Car Corp.,* 363 *U.S.* 593, 597, 80 *S.Ct.* 1358, 1361, 4 *L.Ed.*2d 1424, 1428 (1960) (an arbitrator's decision must "draw[ ] its essence from the . . . bargaining agreement").

■ Against this backdrop, it is virtually undisputed that the arbitrator did not abide by the terms of the arbitration agreement. The agreement required the arbitrator to respect and follow the decision of the Taiwan courts regarding title to the Kaohsiung property. Specifically, the Taiwan courts were to decide the "title" to the property, and the issue of equitable distribution was to revert to the trier of fact in this jurisdiction. Although the parties have advanced differing interpretations of this agreement, the fact remains that it was incumbent upon the arbitrator to consider the effect of the decisions of the Taiwan courts on the question of equitable distribution. The Taiwan High Court's decision that plaintiff held title to the property and had conveyed it to a third person was a critical fact that could not be ignored under either party's interpretation of the arbitration agreement. We will review the ramifications of that decision in our later discussion of the scope of our remand order. Suffice it to say that under any conceivable interpretation of the parties' arbitration agreement, the arbitrator was not at liberty to ignore the decision of the Taiwan High Court.

That this is so is best illustrated by the obvious problems in enforcing the arbitrator's decision. As we noted earlier, the circumstances surrounding plaintiff's conveyance of the property to Lin You are unclear. We do not know, for example, whether plaintiff or her family received any consideration for title to the property. Nor do we know whether plaintiff or defendant could claim a beneficial interest in the property or the proceeds of its sale. If, for example, plaintiff and defendant collaborated in conveying title in the Kaohsiung property to Lin You for the purpose of defrauding defendant's creditors, they could not under New Jersey law recover the property or the proceeds derived from its sale by Lin You. *See Yeiser v. Rogers,* 19 *N.J.* 284, 288–89, 116 *A.*2d 3 (1955); *Blaine v. Krysowaty,* 135 *N.J.Eq.* 355, 357, 38

A.2d 859 (Ch.Div.1944). We do not know whether under Taiwan law plaintiff can make claim against Lin You for the proceeds of the sale of the property. If she cannot, only she and not the defendant will bear the impact of that loss under the arbitrator's decision. It would be a grievous injustice under such circumstances for the court to compel plaintiff to produce one-half of the NT $7,000,000 proceeds from the sale of the property for defendant's benefit or to recast the equitable distribution scheme in defendant's favor, as defendant requests in his brief and in oral argument. If defendant collaborated in a sham transaction in order to avoid the reach of his creditors, he should bear an equal share of the loss. Conversely, if plaintiff alone engaged in a fraudulent transaction resulting in the loss of the property or the proceeds from its sale, she could reasonably be charged with dissipation of a marital asset and the equitable distribution scheme should be crafted to reflect that result. *See Kothari v. Kothari,* 255 *N.J.Super.* 500, 507, 605 *A.2d* 750 (App.Div.1992); *Weiss v. Weiss,* 226 *N.J.Super.* 281, 291, 543 *A.2d* 1062 (App.Div.), *certif. denied,* 114 *N.J.* 287, 554 *A.2d* 844 (1988); *Monte v. Monte,* 212 *N.J.Super.* 557, 567–68, 515 *A.2d* 1233 (App.Div.1986).

By ignoring the decisions of the Taiwan courts, contrary to the arbitration agreement, the arbitrator failed to confront these, and other, difficult issues. We are convinced that the arbitration agreement, however it is interpreted, did not grant the arbitrator the power to ignore the decisions of the Taiwan courts. This issue is not one of according comity among nations.[1] *See, e.g., Fantony v. Fantony,* 21 *N.J.* 525, 533, 122 *A.2d* 593 (1956); *Ivaldi v. Ivaldi,* 288 *N.J.Super.* 575, 589, 672 *A.2d* 1226 (App.Div.), *rev'd on other grounds,* 147 *N.J.* 190, 685 *A.2d* 1319 (1996). Instead, it pertains directly to the power and jurisdiction of the arbitrator as granted

---

[1] While the question has not been raised specifically, we perceive no public policy barring the parties from selecting different forums for the resolution of different issues. *See Kubis & Perszyk Assocs. v. Sun Microsystems,* 146 *N.J.* 176, 186–92, 680 *A.2d* 618 (1996); *Param Petroleum Corp. v. Commerce & Indus. Ins. Co.,* 296 *N.J.Super.* 164, 166, 686 *A.2d* 377 (App.Div.1997).

by the arbitration agreement. The arbitrator imperfectly exercised her powers, and the court was thus bound to vacate the award.

### III.

We remand the matter to the Family Part for further proceedings. The threshold issue that must be addressed by the court concerns the parameters of the arbitrator's jurisdiction under the arbitration agreement. Our Supreme Court has held that "[i]n the absence of an express contract provision conferring authority on the arbitrator, it is uniquely within the province of the courts, and not arbitrators, to make the initial and threshold determination regarding the arbitrability of a particular issue." *Laborers' Local Union v. Interstate Curb & Sidewalk*, 90 *N.J.* at 463, 448 *A.*2d 980. Thus, "whether the dispute in question is arbitrable under the terms of the arbitration clause is a matter for judicial determination." *P.T. & L. Const. Co. v. Teamsters Local 469*, 131 *N.J.Super.* 104, 114, 328 *A.*2d 642 (Law Div.1973) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 *U.S.* 543, 84 *S.Ct.* 909, 11 *L.Ed.*2d 898 (1964); *International Union of Elec., Radio & Mach. Workers v. Westinghouse Elec. Corp.*, 268 *F.*2d 352 (3d Cir.1959)), *aff'd*, 66 *N.J.* 97, 328 *A.*2d 603 (1974).

The Family Part must determine the nature and extent of the arbitrator's powers under the arbitration agreement. The relevant question is whether the parties intended that the Taiwan courts decide the eligibility of the Kaohsiung property for equitable distribution, as plaintiff contends, or merely the question of title, as defendant contends. The Family Part purported to resolve that question by opining that the parties intended to exclude the Kaohsiung property from equitable distribution if the Taiwan courts found that only plaintiff owned the parcel. However, our reading of the transcript discloses that the Family Part's decision in that respect was based solely on considerations of expedition. We view the issue as one of fact, which bears heavily on the "paramount objective" of administering justice. *Allegro v.*

*Afton Village Corp.*, 9 *N.J.* 156, 161, 87 *A.*2d 430 (1952). Specifically, the court must determine the intent of the parties respecting what powers were to be granted to the arbitrator and what issues were to be resolved by the Taiwan courts. We note that the letters exchanged by the parties' lawyers which contained the stipulation providing for arbitration specifically referred to prior correspondence on the subject. This evidence might well shed light on the issue. In any event, the Family Part must determine from the available evidence exactly what issues were to be decided by the Taiwan courts and what questions were to be resolved by the arbitrator.

Once the arbitrability of specific issues is decided by the Family Part, the matter should be submitted to the arbitrator with appropriate instructions. We recognize that, however the Family Part interprets the arbitration agreement, the arbitrator and counsel may be faced with difficult problems of proof concerning the circumstances under which plaintiff conveyed the Kaohsiung property and the manner in which Lin You disposed of the proceeds from the later sale. We listed several of these questions in our discussion relating to the problems attendant to enforcing the arbitrator's prior decision. We add that the components of alimony, support and equitable distribution are interdependent, and thus disposition of some issues may well have a bearing on resolution of others. *See Conforti v. Guliadis,* 128 *N.J.* 318, 326, 608 *A.*2d 225 (1992); *Tassie v. Tassie,* 140 *N.J.Super.* 517, 521, 357 *A.*2d 10 (App.Div.1976). If, for example, some properties are eliminated from the marital estate, equitable distribution of other assets may be affected and the disposition of the marital estate may need to be recrafted in accordance with the factors set forth in *N.J.S.A.* 2A:34–23.

Because the matter must ultimately be remanded for arbitration, we need not address the points raised in the cross-appeal filed by plaintiff and the intervenors. We assume that these issues will be resolved in subsequent proceedings.

The judgment of the Family Part is reversed. The matter is remanded to the Family Part for further proceedings consistent with this opinion.