947 A.2d 663 (2008)
400 N.J. Super. 358
TOWNSHIP OF PISCATAWAY, a municipal corporation of the State of New Jersey, Plaintiff-Respondent,
v.
SOUTH WASHINGTON AVENUE, LLC; Ruth Halper, Executrix of the Estate of Herbert Halper; Laurence Halper; Mark Halper; Ruby Halper-Erkkila, M.D.; and Faith Rost, Defendants-Appellants, and
United States of America; State of New Jersey; Jersey Central Power & Light Co.; Texas Eastern Transmission Corp.; Public Service Electric & Gas Co.; Helen Harper; Simon Halper; Bella Harper; Ronald Halper, Bonnie Halper; and Cindy Halper-Raiman, Defendants.
Township of Piscataway, a municipal corporation of the State of New Jersey, Plaintiff-Appellant,
v.
South Washington Avenue, LLC; Ruth Halper, Executrix of the Estate of Herbert Halper; Laurence Halper; Mark Halper; Ruby Halper-Erkkila, M.D.; Faith Rost; Ronald Halper; Bonnie Halper; and Cindy Halper-Raiman, Defendants-Respondents, and
United States of America; State of New Jersey; Jersey Central Power & Light Co.; Texas Eastern Transmission Corp.; Public Service Electric & Gas Co.; Helen Harper; Simon Halper; and Bella Harper, Defendants.
Docket No. A-3648-05T3, A-4094-05T3
Superior Court of New Jersey, Appellate Division.
Argued April 8, 2008.
Decided May 14, 2008.
*664 Barbara S. Schwartz, Scotch Plains, argued the cause for appellants in A-3648-05T3.
James F. Clarkin, III, argued the cause for respondent in A-3648-05T3 and for appellant in A-4094-05T3 (Clarkin & Vignuolo, P.C., and Waters, McPherson, McNeill, P.C., attorneys; Mr. Clarkin and Peter Vignuolo, of counsel and on the brief).
Edward D. McKirdy argued the cause for respondents in A-4094-05T3 (McKirdy and Riskin, P.A., attorneys; Mr. McKirdy, L. Jeffrey Lewis, and Joseph W. Grather, on the brief).
Before Judges COBURN, FUENTES and GRALL.
The opinion of the court was delivered by
COBURN, P.J.A.D.
The Township of Piscataway filed this condemnation action to preserve a 75 acre farm as open space. The farm's owners, defendants South Washington Avenue LLC and members of the Halper family (the "Halpers"), answered the complaint, denying Piscataway's authority to condemn their property. After the action had been pending for approximately five years, Piscataway filed a declaration of taking and deposited in court its estimate of the fair market value of the farm as of the *665 date the condemnation action was filed, which was approximately $4.3 million. The Halpers withdrew the deposit but continued to challenge Piscataway's right to condemn the property.
During the five years between the filing of the complaint and the filing of the declaration of taking, the value of the farm increased substantially. The increase was not related to Piscataway's conduct; rather, it resulted from market forces and inflation. Without abandoning their challenge to the condemnation, the Halpers asked the trial judge to set the filing date of the declaration of taking as the valuation date. Piscataway objected, arguing that the valuation date should be the date its complaint was filed. The judge agreed with the Halpers, and a jury determined that the fair market value of the farm was $17,955,000.
Barbara S. Schwartz filed an appeal on behalf of the Halpers under Docket No. A-3648-05T3, arguing that the condemnation should be set aside and the property returned to the Halpers because of alleged conflicts of interest and related matters. Piscataway filed an appeal under Docket No. A-4094-05T3, arguing that the judgment should be reversed for a new trial on damages based on the property's fair market value as of the date the complaint was filed or as of the earlier date on which Piscataway advised the Halpers of its intent to acquire the property. On this second appeal, the Halpers, represented by McKirdy and Riskin, argue that if the condemnation is not vacated, the judgment should be affirmed. We consolidated the appeals.
This action is governed by the Eminent Domain Act of 1971 (the "Act"), N.J.S.A. 20:3-1 to -50, and Article I, paragraph 20, of our State Constitution and the Fifth Amendment of the Federal Constitution, both guaranteeing that government may not take private property for public use without just compensation. The first issue to be resolved is whether a condemnee's withdrawal of a deposit made by a governmental entity pursuant to a declaration of taking is a waiver of the right to litigate all issues except the fair amount of compensation. And the second issue is whether the date the complaint is filed or the date the declaration of taking is filed is the proper valuation date when a condemned property increases in value between those dates due solely to market forces and inflation.
We hold that under the Act a condemnee's withdrawal of the deposit made with the declaration of taking is a waiver of all rights except for the right to litigate the amount of compensation. We further hold that when property increases in value between the date the complaint was filed and the date the declaration of taking was filed and the deposit made, and the increase is not due to governmental action but to market forces and inflation, the date of valuation must be the date of the deposit. Therefore, we affirm the judgment.

I
Before stating the case in detail, we note that the record does not include a transcript of the jury trial because the only issue respecting that trial is whether the previously selected date of valuation was correct. Also, in light of our determination that the Halpers' withdrawal of the deposit waived all issues except for the fair market value of the property, much of the case history can be omitted as irrelevant.
On February 5, 1999, Piscataway advised the Halpers that it intended to acquire their 75 acre farm for public use. The Halpers had owned and operated the farm, which is located in Piscataway, for over 80 years. On May 3, 1999, Piscataway wrote to the Halpers offering to purchase *666 the farm for $4,326,000, based on a duly obtained appraisal. Unsuccessful negotiations ensued, and Piscataway filed its complaint to condemn the Halpers' farm on December 10, 1999.
The Halpers answered the complaint, denying Piscataway's right to condemn their property on various grounds that need not be detailed. On June 1, 2000, the Assignment Judge sustained the ordinance authorizing the condemnation, ordered Piscataway to provide the Halpers with a copy of an appraisal previously prepared for the County of Middlesex when it was considering taking the property by eminent domain, and gave the parties thirty days for further negotiations.
With the support of Piscataway, and the acquiescence of the Assignment Judge, the Halpers spent the next two years attempting to place their property in the farmland preservation program administered by the Middlesex County Agriculture Development Board ("CADB"). On July 11, 2002, the CDAB certified the fair market value of the farm's development easement. The Halpers rejected the CADB's offer, and the parties returned to court, where the Halpers again challenged the condemnation on a number of grounds but not on the basis of any conflict of interest.
The Assignment Judge ruled in favor of Piscataway and ordered the appointment of condemnation commissioners, directing them to determine the fair market value of the property as of the date the complaint was filed. The Halpers appealed, and we affirmed, sustaining Piscataway's right to condemn the property. Twp. of Piscataway v. South Washington, LLC, No. A-2741-02 (App.Div. March 19, 2004), certif. denied, 180 N.J. 457, 852 A.2d 193 (2004). In that appeal, we were not asked to address, and we did not discuss, the valuation date.
On September 3, 2004, Piscataway filed its declaration of taking and deposited $4,326,000 with the court. On January 5, 2005, the condemnation commissioners filed their report valuing the farm at $5.4 million as of December 10, 1999. On February 4, 2005, the Halpers obtained an order from the Assignment Judge permitting them to withdraw the deposit minus $100,000 they owed on a federal tax lien and $4,402.50 they owed for real estate taxes. During the argument of these appeals, the Halpers stipulated that they withdrew the funds, about $4.2 million, within a few weeks after the order was entered.
Pursuant to the Act, the Halpers appealed to the Assignment Judge from the decision of the condemnation commissioners, demanding a jury trial and a change of the valuation date to the date of the filing of the declaration of taking. They supported their motion for change of the valuation date with undisputed expert evidence indicating that during the time between the filing of the complaint and the filing of the declaration of taking, the property had increased in value by no less than 83% as a result of market forces unrelated to any action taken by Piscataway.
On March 31, 2005, the Assignment Judge determined that the valuation date would remain as December 10, 1999, the date the complaint was filed. The Halpers asked for interlocutory review of that determination, which we denied.
On June 24, 2005, Laurence Halper filed a motion to disqualify the Assignment judge based on an alleged conflict of interest and for other relief irrelevant to this appeal. On July 22, 2005, he filed another motion again seeking to disqualify the Assignment Judge and obtain other relief, which included vacation of the previously affirmed condemnation judgment. In support of this motion, he alleged that other *667 persons involved, or possibly involved, in this matter had conflicts of interest warranting relief from the condemnation judgment. At some undefined point the other Halpers joined in these motions. The Assignment Judge found that no conflict of interest existed that would warrant his withdrawal from the case or the vacation of any of his previous orders. Nonetheless he decided to assign the case to another judge.
On September 6, 2005, the Halpers moved for a stay of possession and for reconsideration of the valuation date. The trial judge to whom the matter had been assigned agreed with the Halpers, granting the stay and changing the valuation date to September 3, 2004, the date on which the declaration of taking was filed. Piscataway sought leave to appeal, which was denied, and the jury trial occurred in late January 2006, ending with the $17,955,000 verdict.
On February 6, 2006, Piscataway deposited an additional $8,574,000 into court. Appeals were filed and the Halpers pursued emergent relief to remain in possession of the property, while Piscataway opposed that relief and requested a stay preventing the Halpers from withdrawing any of the additionally deposited funds. Ultimately, the Supreme Court granted Piscataway's motion to prevent further withdrawal of the deposited funds pending the outcome of these appeals and further ordered that the stay of the judgment would expire at 3:00 p.m. on July 10, 2006, by which time the Halpers were to have left the property.

II
Before addressing the first issue, we must dispose of a procedural bar to our consideration of these appeals. The ultimate order from which both sides appeal is entitled "ORDER FOR JUDGMENT ON LESS THAN ALL CLAIMS." Although the order declares that it is "deemed final for purposes of appeal," it is not a final judgment. The order itself provides for "a summary proceeding on the issue of interest" at a future date and permits the parties to file certifications and expert reports respecting the claim for interest. In addition, the judge had earlier severed a claim made by the Halpers for Piscataway's alleged interference with their crops, a claim that apparently remains to be tried.
An appeal as of right may be taken to the Appellate Division only from a final judgment. Janicky v. Point Bay Fuel Inc., 396 N.J.Super. 545, 549, 935 A.2d 803 (App.Div.2007). A final judgment is one that disposes of all claims. Ibid. Since the order under appeal does not dispose of all claims, and does not fall within the categories set forth in Rule 4:42-2, the parties are not entitled to be heard now as of right. Id. at 550-52, 935 A.2d 803. Although we have the option of dismissing the appeal, we may also grant leave to appeal nunc pro tunc when the interests of justice would be best served by that course. Caggiano v. Fontoura, 354 N.J.Super. 111, 125, 804 A.2d 1193 (App.Div.2002). Considering the nature of this case, its age, the vast amount of work expended in presenting the case to us, and the important and novel issues involved, we grant leave to appeal now.

III
We raised the first issue  whether the Halpers' withdrawal of the deposit waived all issues other than the fair market value of the property  on our own motion before argument. It is quite appropriate for an appellate court to raise a new issue of law "where upon the total scene it is manifest that justice requires consideration of an issue central to a correct *668 resolution of the controversy and the lateness of the hour is not itself a source of countervailing prejudice. . . ." In re Appeal of Howard D. Johnson Co., 36 N.J. 443, 446, 177 A.2d 756 (1962) (citation omitted). Neither party argued that they were prejudiced by our action and the issue is of central importance to the case. Moreover, we gave the parties an opportunity to file supplemental briefs and to argue the point, thereby satisfying their due process rights. State, Office of Employee Relations v. Commc'ns Workers of Am., 154 N.J. 98, 108-09, 711 A.2d 300 (1998); Ctr. for Molecular Med. and Immunology v. Twp. of Belleville, 357 N.J.Super. 41, 48, 813 A.2d 1243 (App.Div.2003).

IV
To set the first issue in context, we take note of the followings provisions of the Act. Condemnations under the Act are commenced with the filing of a verified complaint. N.J.S.A. 20:3-8. The condemnor may file a declaration of taking with the complaint, and if it follows that course it has "the right to immediate and exclusive possession and title to the property. . . ." N.J.S.A. 20:3-19; County of Monmouth v. Wissell, 68 N.J. 35, 38, 342 A.2d 199 (1975). But the condemnor is not required to follow that course. N.J.S.A. 20:3-17. Instead, it may withhold the filing of the declaration of taking, thereby preserving its right to dismiss the action, N.J.S.A. 20:3-35, if, for example, it concludes that the property value ultimately established in the proceedings is too high, or it determines for other reasons that the public interest will no longer be served by purchase of the property. Twp. of West Orange v. 769 Assocs., LLC., 397 N.J.Super. 244, 251-52, 936 A.2d 1023 (App.Div. 2007). However, once it files the declaration of taking its loses the unilateral right to abandon the action. N.J.S.A. 20:3-35.
If the condemnor does not file a declaration of taking within six months after the condemnation commissioners are appointed pursuant to N.J.S.A. 20:3-12, the condemnee may apply to the court for an order requiring the filing of the declaration of taking or requiring abandonment of the condemnation. N.J.S.A. 20:3-25. The purpose of this section is to protect property owners. Wissell, supra, 68 N.J. at 42, 342 A.2d 199.
When the condemnor files the declaration of taking, it must simultaneously deposit the amount of estimated compensation required by Act. N.J.S.A. 20:3-18. Thereafter, the condemnee may apply to the court for withdrawal of the deposit. N.J.S.A. 20:3-23. Alternatively, the condemnee may apply for a stay of the taking pursuant to N.J.S.A. 20:3-19. In any case, once the condemnee files an answer denying the authority to condemn, "all further steps in the action shall be stayed until that issue has been finally determined." N.J.S.A. 20:3-11.
The Act addresses the effect of a condemnee's withdrawal of the deposit in the following manner:
Neither the making of the deposit nor any withdrawal thereof pursuant to this article, shall affect or prejudice the rights of either the condemnor or the condemnee in the determination of compensation. The amount of such deposit and any withdrawal thereof, shall not be evidential in such determination.
[N.J.S.A. 20:3-27 (emphasis added).]
Piscataway contends that this section of the Act implicitly bars a condemnee who makes a withdrawal of the deposit from asserting any rights other than those relating to the amount of compensation. The Halpers disagree, arguing that the language does nothing more than it plainly states; namely, that it preserves their *669 right to appeal the amount of compensation, while implicitly leaving untouched, because it is not mentioned, their right to challenge Piscataway's right to condemn their property.
We are satisfied that Piscataway's interpretation of N.J.S.A. 20:3-27 is sound, particularly when it is construed in light of the fundamental common law rule that "a litigant who voluntarily accepts the benefits of a judgment is estopped from attacking it on appeal." Tassie v. Tassie, 140 N.J.Super. 517, 524, 357 A.2d 10 (App.Div. 1976) (citations omitted). We also noted in Tassie, that
[t]he rule that a litigant cannot seek appellate review of a judgment under which he has accepted a benefit is but a corollary to the established principle that any act upon the part of a litigant by which he expressly or impliedly recognizes the validity of a judgment operates as a waiver or surrender of his right to appeal therefrom.
[Id. at 525, 357 A.2d 10 (citations omitted).]
In Simon v. Simon, 148 N.J.Super. 40, 42, 371 A.2d 818 (App.Div.), certif. denied, 75 N.J. 12, 379 A.2d 243 (1977), we said that this rule or principle
governs only where the appeal constitutes a repudiation of the judgment under which the benefits were received or is materially inconsistent therewith. Generally, appellate review is barred where it may lead to a result showing that appellant is not entitled to what was received under the judgment appealed from.
In Adolph Gottscho, Inc. v. American Marking Corp., 26 N.J. 229, 242, 139 A.2d 281 (1958) (citations omitted), the Court endorsed the right of a "party to accept a sum to which he is in any event entitled and still pursue his request for a legal ruling on appeal which would increase that sum."
Although New Jersey has not previously applied these principles in the context of a condemnation action, many other jurisdictions have, and their decisions fully support a ruling in favor of Piscataway, limiting the Halpers to appealing only with respect to the amount of damages. Winslow v. Baltimore & Ohio R.R. Co., 208 U.S. 59, 62, 28 S.Ct. 190, 191, 52 L.Ed. 388, 390 (1908); Hitchcock v. Danbury & Norwalk R.R. Co., 25 Conn. 516, 518-19 (1857); Kile v. Town of Yellowhead, 80 Ill. 208, 211 (1875); Test v. Larsh, 76 Ind. 452, 460-61 (1881); Holland v. Spell, 144 Ind. 561, 42 N.E. 1014, 1015 (1896); Shapiro v. Maryland-Nat'l Capital Park & Planning Comm'n, 235 Md. 420, 201 A.2d 804, 805-06 (1964); Missouri ex rel. State Highway Comm'n of Missouri v. Howald, 315 S.W.2d 786, 789 (Mo.1958); In re Application of New York Relative to Acquiring Title to Lands in the Sixth Ward of Manhattan, Required as a Site for a New Court House, 216 N.Y. 489, 111 N.E. 65, 66 (1916); State v. Jackson, 388 S.W.2d 924, 925 (Tex.1965); Burns v. Milwaukee & Mississippi R.R. Co., 9 Wis. 450, 457 (1859). In all of those cases, the courts, referring either to estoppel, waiver, or implied consent, held that a condemnee could not accept or withdraw deposited funds and thereafter appeal the condemnation on any ground other than the amount of compensation due. That approach is sensible and fully accords with the New Jersey cases cited above. It is also consistent with N.J.S.A. 20:3-27.[1]
*670 We should add that some of the earlier out-of-state cases might have been read as precluding any appeal at all once a deposit was withdrawn. See In re New York, supra, 111 N.E. at 66; Jackson, supra, 388 S.W.2d at 925-26. Thus, the main point of N.J.S.A. 20:3-27 is preservation of the right to appeal on the amount of compensation after a deposit withdrawal. Since the Legislature "is presumed to be familiar . . . with the common law," Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 350, 94 A.2d 482 (1953) (citation omitted), and since "a statute which is claimed to . . . establish a right which was not recognized by the common law will be strictly interpreted to avoid such asserted change," Carlo v. Okonite-Callender Cable Co., 3 N.J. 253, 265, 69 A.2d 734 (1949), N.J.S.A. 20:3-27 is best understood as limiting the appeal to damages and issues related thereto.
In short, having accepted the benefit of the condemnation judgment by withdrawing the $4.3 million deposit, the Halpers are barred from attacking Piscataway's right to condemn their property on appeal. Consequently, there is no justification for our addressing the Halpers' "conflict" arguments relating to Piscataway's right to their property.

V
We will now explain why we reject Piscataway's appeal from the order setting the declaration of taking date, September 3, 2004, as the valuation date, instead of the date on which the complaint was filed, December 10, 1999.
The Act provides as follows:
Just compensation shall be determined as of the date of the earliest of the following events: (a) the date possession of the property being condemned is taken by the condemnor in whole or in part; (b) the date of the commencement of the action; (c) the date on which action is taken by the condemnor which substantially affects the use and enjoyment of the property by the condemnee; or (d) the date of the declaration of blight by the governing body upon a report by a planning board pursuant to section 38 of P.L.1971, c. 361 (C. 20:3-38), or, in the case of a property being maintained as an abandoned property for failure to remove the property from the abandoned property list, as provided pursuant to subsection c. of section 37 of P.L.1996, c. 62 (C. 55:19-56), if there was no declaration of blight, as of the date of expiration of the condemnee's right to appeal inclusion of the property on the abandoned property list.
[N.J.S.A. 20:3-30 (emphasis added).]
Piscataway argues that we are bound to enforce this provision of the Act literally. In support of that position it relies primarily on Township of West Windsor v. Nierenberg, 150 N.J. 111, 695 A.2d 1344 (1997), and Mount Laurel Township v. Stanley, 185 N.J. 320, 885 A.2d 440 (2005).
In Nierenberg, supra, the condemnor sent the condemnees a letter in 1988 advising them it intended to acquire their property. 150 N.J. at 116-17, 695 A.2d 1344. The evidence established that the letter diminished the value of the property by twenty-five percent. Id. at 121, 136, 695 A.2d 1344. The complaint was not filed until 1993. Id. at 121, 695 A.2d 1344.
Observing that one of the purposes of N.J.S.A. 20:3-30(c) "is to establish value at the time that the condemnor's actions substantially affect the landowner's use and enjoyment of his or her property," the Court ruled that the property should be valued, as requested by the condemnees, *671 as of the letter's date. Id. at 137, 695 A.2d 1344 (citation omitted). Although the case applied this section of the act literally, it did not address the problem with which we are concerned: a rise in value between the filing of the complaint and the filing of the declaration of taking.
In Stanley, supra, the condemnor obtained a judgment of repose "approving the Township's fair share housing plan that included the Stanleys' property." 185 N.J. at 324, 885 A.2d 440. Five years passed from the date of that judgment until the condemnation complaint was filed. Id. at 323, 885 A.2d 440. The evidence showed that during that period the land increased in value, not as a result of any action taken by the condemnor, but as a result of inflation. Id. at 326, 885 A.2d 440. The Stanleys argued that the proper valuation date in these circumstances was the filing date of the complaint. Id. at 324, 885 A.2d 440. It was in that context that the Court concluded that it "must apply the hierarchy of `earliest' events set forth in N.J.S.A. 20:3-30," id. at 327, 885 A.2d 440, and that application of the statute required use of the filing date of the complaint as the valuation date. In light of the evidence and the position taken by the Stanleys, the Court had no occasion to consider the effect of an inflationary increase of value between the filing of a complaint and the filing of a declaration of taking.
The holdings of Nierenberg and Stanley do not advance Piscataway's cause. As Piscataway notes, in both decisions the Court remarked that one of the purposes of N.J.S.A. 20:3-30 was to protect condemnors from the effects of inflation. Nierenberg, supra, 150 N.J. at 129, 695 A.2d 1344; Stanley, supra, 185 N.J. at 325, 885 A.2d 440. But neither decision addressed the means provided to a condemnor by the Act for avoiding the effect of inflation. Nor did either decision consider whether automatic reliance on the filing date of the complaint would be consistent with the taking clauses of the State and Federal Constitutions when property values increased due to inflation in the period between the filing of the complaint and the filing of the declaration of taking.
The relationship between N.J.S.A. 20:3-30 and the constitutional provisions governing the exercise of eminent domain was discussed by Judge (now Justice) Long in City of Ocean City v. Maffucci, 326 N.J.Super. 1, 740 A.2d 630 (App.Div.), certif. denied sub nom. City of Ocean City v. 2825 Wesley Ave., Condo., 162 N.J. 485, 744 A.2d 1208 (1999). Judge Long concluded that "arbitrary application of N.J.S.A. 20:3-30 to set the valuation date . . . as of the date the . . . condemnation action was filed is not required where application of the statute would result in unjust compensation to the property owner." Id. at 16, 740 A.2d 630 (quotation and citations omitted).
In Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 10, 104 S.Ct. 2187, 2194, 81 L.Ed.2d 1, 10 (1984), the Court held that in most cases just compensation under the Fifth Amendment is the "fair market value of the property on the date it is appropriated." In Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374, 378, 277 A.2d 873 (1971) (citation omitted), overruled in part by Washington Market Enters., Inc. v. Trenton, 68 N.J. 107, 343 A.2d 408 (1975), the Court observed that "as a general rule . . . just compensation in condemnation cases is measured as of the date of the public taking." The Legislature "may prescribe a rule of damages more favorable to the landowner than that which would satisfy the minimum requirement of the Constitution," but "it cannot adopt a measure which will detract from that compensation." *672 Id. at 384, 277 A.2d 873 (citation omitted). In Housing Authority of New Brunswick v. Suydam Investors, LLC, 177 N.J. 2, 14, 826 A.2d 673 (2003) (quotation and citation omitted), the Court again declared that just compensation means "the fair market value as of the date of the taking. . . ."
Under the Act, the date of taking is the date on which the declaration of taking is filed accompanied by the deposit of the just compensation deposit. N.J.S.A. 20:3-19; N.J.S.A. 20:3-21(a). When the property increases in value due to inflation or market factors unrelated to the initiation of the condemnation action, the valuation date must be the date of the taking. Kirby Forest, supra, 467 U.S. at 16-17, 104 S.Ct. at 2197-98, 81 L.Ed.2d at 14-15; Maffucci, supra, 326 N.J.Super. at 16, 740 A.2d 630; Schneider v. County of San Diego, 285 F.3d 784, 790 (9th Cir.), cert. denied, 537 U.S. 949, 123 S.Ct. 381, 154 L.Ed.2d 294 (2002); Mt. San Jacinto Cmty. Coll. Dist. v. Superior Court of Riverside County, 40 Cal.4th 648, 54 Cal. Rptr.3d 752, 151 P.3d 1166, 1172-74 (2007); County of Dona Ana v. Bennett, 116 N.M. 778, 867 P.2d 1160, 1164 (1994); Utah State Rd. Comm'n v. Friberg, 687 P.2d 821, 829 (Utah 1984); Bd. of Comm'rs of the New Orleans Exhibition Hall Auth. v. Missouri Pac. R.R. Co., 625 So.2d 1070, 1078 (La.Ct.App.1993), cert. denied, 512 U.S. 1220, 114 S.Ct. 2707, 129 L.Ed.2d 835 (1994); 3 Nichols on Eminent Domain § 8.05 (revised 3d ed.).
As previously noted, both Nierenberg and Stanley indicate that one of the purposes of N.J.S.A. 20:3-30 is to protect condemnors from property value increases due to inflation. Although we accept that proposition in general, we do not agree with Piscataway's contention that satisfaction of that purpose requires valuation as of the date the complaint was filed.
Since the Act grants the condemnor the power to file the declaration of taking when it files the complaint or at any time thereafter, N.J.S.A. 20:3-17, it enables the condemnor to avoid the effects of inflation, or other market forces unrelated to its conduct.
Piscataway argues that the delay between the filing of its complaint and the filing of the declaration of taking resulted from the Halpers' efforts to avoid condemnation. But we have previously ruled that condemnees "should not be penalized solely for pursuing . . . legal and statutory rights." State, Dept. of Envir. Protection v. Fairweather, 298 N.J.Super. 421, 429, 689 A.2d 817 (App.Div.1997). Or, as the Supreme Court of Utah put it:
The law does not require landowners to meekly yield to the State's claim to condemn his or her land. Every landowner in this country has a right to resist with every legal means available the expropriation of his or her land. The right of eminent domain does not require docile passivity on the part of the landowner.
[Friberg, supra, 687 P.2d at 834.]
The Halpers were entitled to pursue all of the legal courses open to them, including their application for farmland preservation and their initial resistance to the condemnation action. They cannot be faulted for Piscataway's decision to support the farmland preservation application instead of filing a declaration of taking.
Piscataway responds, in part, by arguing that under the Act, once the Halpers filed an answer challenging its right to condemn their property, it could not file the declaration of taking until its right to condemn had been adjudicated. The section of the Act on which Piscataway relies is N.J.S.A. 20:3-11, which reads as follows:
Failure to deny the authority of the condemnor to condemn in the manner *673 provided by the rules, shall constitute a waiver of such defense. When the authority to condemn is denied, all further steps in the action shall be stayed until that issue has been finally determined.

[Emphasis added.]
In County of Sussex v. Merrill Lynch Pierce Fenner & Smith, Inc., 351 N.J.Super. 66, 72-73, 796 A.2d 958 (Law Div. 2001), aff'd, 351 N.J.Super. 1, 796 A.2d 913 (App.Div.2002), the court held that the stay effected by N.J.S.A. 20:3-11 expires on the date judgment is given by the trial court permitting the condemnation action to proceed. Therefore, Piscataway argues that it could not have filed its declaration of taking in this case until December 18, 2002. It then points out that the Halpers obtained further stays of the judgment, thereby further preventing the filing of the declaration of taking until after the Supreme Court denied certification on June 30, 2004.
We disagree with Piscataway's literal interpretation of N.J.S.A. 20:3-11. We base our disagreement, in part, on the undeniable fact that a condemnor may file a declaration of taking when it files the complaint, N.J.S.A. 20:3-17, which is before the condemnee has had an opportunity to deny the right to condemn. When that course is followed, the condemnee may apply for an order staying the taking of possession. N.J.S.A. 20:3-19. But nothing in that section indicates that the condemnor's filing of the declaration of taking and making of the deposit should be set aside, or otherwise rendered ineffectual. It is only the taking of possession that is deferred. We perceive no sound reason for treating differently the stay authorized by N.J.S.A. 20:3-11. In other words, when that section refers to a stay of "all further steps," it is best understood as referring to steps that actually interfere with the condemnee's ownership of the property. Cf. Twp. of Bridgewater v. Yarnell, 64 N.J. 211, 214-15, 314 A.2d 367 (1974) (finding that "all further proceedings in the condemnation action as well as all work within a disputed section of the route must be stayed until the question of route is completely determined. . . ."). The deposit has no such effect. And since staying the deposit would subject the condemnor to the effects of inflation, which would be inconsistent with one of the Act's purposes, we hold that this section does not prohibit the deposit so long as the condemnee remains in possession of the property.
Piscataway also argues that the resetting of the valuation date from December 10, 1999, to September 3, 2004, was procedurally improper. We are satisfied that this claim is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). However, we note that the order setting the earlier date was interlocutory, and a "trial court has the inherent power, to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment." Johnson v. Cyklop Strapping Corp., 220 N.J.Super. 250, 257, 531 A.2d 1078 (App. Div.1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988).
Affirmed.
NOTES
[1] The Uniform Law Commissioners' Model Eminent Domain Code provides in pertinent part that "[a] defendant who withdraws money under this Article waives all objections and defenses to the action and to the taking of his property, except for any claim to greater compensation." Model Eminent Domain Code (U.L.A.) § 606 (1974).