966 A.2d 62 (2009)
405 N.J. Super. 599
IRON MOUNTAIN INFORMATION MANAGEMENT, INC., Plaintiff-Appellant,
v.
CITY OF NEWARK, Defendant-Respondent, and
Municipal Council of the City of Newark, Central Planning Board of the City of Newark and City of Newark Housing Authority, Defendants.
No. A-6561-06T2.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 2009.
Decided March 13, 2009.
*64 William J. Ward, Florham Park, argued the cause for appellant (Carlin & Ward, P.C., attorneys; Mr. Ward and John J. Carlin, Jr., of counsel and on the brief; Scott A. Heiart, on the brief).
Bradley M. Wilson, Hackensack, argued the cause for respondent (Nowell Amoroso Klein Bierman, P.A., attorneys; Mr. Wilson, of counsel and on the brief).
Before Judges CUFF, FISHER and BAXTER.
The opinion of the court was delivered by
BAXTER, J.A.D.
The central question before us is whether the Law Division erred when it dismissed as untimely a commercial tenant's challenge to the City of Newark's redevelopment plan, even though that tenant never received individual notice that the property in which its business was located was targeted for redevelopment. In particular, we are called upon to decide whether a commercial tenant is entitled in the redevelopment context to the same rights that must be afforded to an owner of the property, as held in Harrison Redevelopment Agency v. DeRose, 398 N.J.Super. 361, 942 A.2d 59 (App.Div.2008). There, we held the notice provisions of the Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 to -49, constitutionally infirm, and required fair and adequate contemporaneous individual written notice of the impending redevelopment process to the property owner. 398 N.J.Super. 361, 367-68, 942 A.2d 59 (App. Div.2008). We further held that unless such constitutionally adequate notice is provided, the owner's right to challenge the redevelopment designation is preserved beyond the forty-five day limit established by statute and court rule. Id. at 368, 942 A.2d 59.
Notably, when the Legislature adopted the LRHL, it chose not to impose upon a governing body any obligation to provide commercial tenants with individual notice of a proposed blight designation. In fact, the LRHL treats commercial tenants no *65 differently from any other member of the general public whose only notice of the proposed blight designation is publication of a hearing notice in a newspaper of general circulation once a week in each of the two weeks preceding the Planning Board meeting. N.J.S.A. 40A:12A-6(b)(3). This is in sharp contrast to the individual notice, however "spotty and incomplete," DeRose, supra, 398 N.J.Super. at 400, 942 A.2d 59, the Legislature required for property owners.
We now hold that a commercial tenancy does not trigger the enhanced notice requirements found necessary in DeRose to save the redevelopment statute's notice provisions from constitutional infirmity, unless its unit is noted in the tax assessor's records. The trial judge correctly held that plaintiff, a commercial tenant, was obliged to challenge the blight designation within forty-five days even though not afforded individual advance notice of such proposed designation. We thus affirm the trial judge's dismissal of plaintiff's complaint.

I.
Plaintiff, Iron Mountain Information Management, Inc., operates a document storage and retrieval business in a six-story, 350,000 square foot building (the building) located at 110 Edison Place in Newark. Situated on a 2.04 acre lot, the building is bordered by McCarter Highway and Edison Place. All six floors of the building, which was constructed in the early part of the twentieth century, are dedicated to plaintiff's business of storing files, stacked floor to ceiling, for law firms and hospitals. Plaintiff, the sole tenant in the building, has occupied the property since August 28, 1996, when it entered into a long-term lease with the owner, the Berkowitz Company, to rent the property until August 31, 2014, with the option to extend the term of the lease for two successive five-year periods.
The lease also afforded plaintiff the option to purchase the property "at a fixed formula during the period from September 1, 2006[to] December 31, 2008," and provided plaintiff a right of first refusal if another party offered to purchase it. Finally, the lease entitles plaintiff to share, according to a fixed formula, in any proceeds realized by Berkowitz if the property is taken by eminent domain, but only if the taking occurred prior to September 1, 2007.
On April 12, 2004, defendant Municipal Council of the City of Newark (City Council) adopted a resolution authorizing the Planning Board to investigate whether a number of properties within a twenty-four acre zone known as the Core Area qualified as blighted pursuant to N.J.S.A. 40A:12A-5. The Berkowitz property was within that Core Area.
To complete the investigation ordered by City Council, the Planning Board commissioned Schoor DePalma to investigate whether the Core Area was blighted. On May 20, 2004, Schoor DePalma issued its investigative report answering that question in the affirmative, describing the Core Area as:
[e]xhibit[ing] a growing lack of proper utilization resulting in a stagnant and not fully productive condition of land, which is highlighted by the proliferation of parking lots as one of the dominant land uses, a high volume of vacant commercial space, conflicting land uses, and the low value of taxable improvements found throughout the study area.
With respect to the Berkowitz property, Schoor DePalma observed that its *66 interior was in poor condition[1] and described it as "an obsolete building with a marginal economic use":
This building['s] ... vertical design is obsolete for modern warehousing needs, which is evidenced by the leasing of the building to multiple tenants over at least the past 27 years. The area around the building has been transformed from the mixed-use residential, commercial and industrial area of the early 20th Century to the modern corporate office and business district of the 21st Century, leaving an obsolete building with a marginal economic use in the heart of the CBD [central business district].
In addition, the current storage use of the building generates minimal employment and creates a stagnant condition over half of Block 159, which when combined with the expanse of surface parking on the adjacent properties is a lack of proper utilization of land in the Central Business District. It is unlikely that this condition will be remedied without some further assemblage [of] properties....
The report then discussed the Berkowitz building in relation to the surface parking lots on the adjacent properties, and concluded that as a whole the properties qualified as blighted under N.J.S.A. 40A:12A-5(a), (d) and (e):
The surface parking lots consume over 4 acres (71% of the total 5.6-acre block) of downtown real estate while posting an improvement value of only 4%. These blocks are characterized by conditions that are obsolete, deleterious and unproductive, which qualify the block under criteria "a", "e" and "d" [of N.J.S.A. 40A:12A-5].
On June 9, 2004, the Planning Board held a public hearing on whether the Core Area qualified as blighted. Notice of the hearing was published in The Star-Ledger on May 22 and 29, 2004, and notice was mailed to Berkowitz. A representative appeared on behalf of Berkowitz, and objected to the Berkowitz property being designated blighted. No one appeared at the hearing on behalf of plaintiff.
On June 28, 2004, the Planning Board passed a resolution recommending that all of the properties in the Core Area be designated blighted. On July 14, 2004, City Council passed a resolution, approving the Planning Board's recommendation to declare the study area blighted, and adopting the Board's findings. City Council directed Schoor DePalma to draft a redevelopment plan for the Core Area.
On August 16, 2004, the Planning Board held a public hearing on the redevelopment plan proposed by Schoor DePalma. Two of the plan's provisions had significant implications for the Berkowitz property. First, the plan specified that warehouse facilities, such as the Berkowitz property, be excluded and prohibited. Second, the plan authorized the acquisition of most parcels within the Core Area, including the subject property. The plan identified the Berkowitz property as "an optional site in the plan" that "could remain, be modified, or demolished to make way for additional development." The plan provided for the construction of a sports and entertainment arena in the area where the Core Area and another redevelopment zone known as the Gateway Area overlapped.
*67 No one objected to or commented on the plan at the August 16, 2004 Planning Board public hearing, and on August 25, 2004, the Planning Board passed a resolution recommending its adoption. On October 6, 2004, City Council passed both an ordinance adopting the plan and a resolution, pursuant to N.J.S.A. 40A:12A-4(c), designating the Housing Authority to act as the redevelopment agency for the Core Area.
On November 22, 2004, plaintiff filed a complaint in lieu of prerogative writs against the City, City Council and Planning Board seeking to invalidate the July 14, 2004 City Council resolution that designated the area blighted, and the October 6, 2004 City Council ordinance that adopted the redevelopment plan. The complaint alleged: 1) the plan failed to comply with statutory requirements governing the contents of a redevelopment plan and was unconstitutionally vague; 2) inclusion of the Berkowitz property in the redevelopment plan was baseless because the property was not blighted; and 3) the October 2004 ordinance adopting the plan was arbitrary, capricious and unreasonable, and impermissibly authorized the condemnation of the Berkowitz property for a private purpose.
As to the latter allegation, plaintiff contended that the City had acted in bad faith by including the non-blighted Berkowitz property only to enable the City to trade it for another piece of property that Edison Properties (Edison) owned, upon which the City wanted to construct a sports and entertainment arena. An amended complaint, filed on August 19, 2005, added an allegation, pursuant to 16 U.S.C.A. § 470f of the Historic Prevention Act, that the City was prohibited from modifying or destroying the Berkowitz building because of its historical significance.
On January 5, 2006, defendants moved to dismiss plaintiff's amended complaint. Defendants argued that plaintiff's blight challenge was untimely because plaintiff's complaint, filed on November 22, 2004, was not filed within forty-five days of City Council's July 14, 2004 resolution adopting the Planning Board's findings and declaring the area blighted. Defendants relied upon Rule 4:69-6(a), which requires any challenge to municipal action to be filed within forty-five days.
On April 12, 2006, the court agreed that plaintiff's challenge to the July 14, 2004 blight designation was untimely and entered an order dismissing it; however, the court held that plaintiff's November 22, 2004 complaint was a timely challenge to the October 6, 2004 ordinance adopting the redevelopment plan. Consequently, the court refused to dismiss plaintiff's challenge to the redevelopment plan. At the conclusion of the discovery period, both sides filed motions for summary judgment, which were heard on July 16, 2007.
As it had done during the previous motion hearing, plaintiff asserted that the plan made inclusion of the Berkowitz property optional and that the City had done so to preserve the option of trading the Berkowitz property for some of Edison's property to construct a sports and entertainment arena. The trade benefited Edison, argued plaintiff, and served no valid public purpose.
Judge Schott concluded that plaintiff's challenge was not to the October 6, 2004 redevelopment plan, but instead to the Berkowitz property's inclusion within the redevelopment area, i.e. that plaintiff was actually challenging the basis for the blight designation, which City Council had accepted when it declared the Core Area blighted on July 14, 2004. Consequently, the court held that the blight challenge was time-barred.
*68 In so ruling, the judge incorporated by reference her earlier determination that the Rule 4:69-6(a) forty-five-day limitation period precluded plaintiff's challenge to the blight designation because the City Council resolution designating the Core Area blighted was adopted on July 14, 2004, and plaintiff did not file its complaint until November 22, 2004. The court rejected plaintiff's argument that the Planning Board's failure to provide it individualized, or personal, notice of the June 9, 2004 hearing on the blight designation justified its late challenge, or alternatively, formed a basis to grant a time extension.
The judge reasoned that not only was notice of the hearing published in The Star-Ledger, but plaintiff provided "no foundation of competent evidence" establishing that it "was unaware that this [action by the Planning Board] was going on." The judge reasoned that plaintiff submitted no certified statement asserting it was unaware of the Planning Board's actions or that the Planning Board, or any other City entity, did anything to confuse plaintiff about the Berkowitz property's status within the Core Area or its inclusion within the redevelopment plan. Thus, the judge concluded that plaintiff was aware of the Planning Board's actions and should have filed its challenge within the forty-five-day period required by Rule 4:69-6(a). The judge also rejected plaintiff's argument that an extension of time was warranted by Rule 4:69-6(c), which authorizes an extension when "it is manifest that the interest of justice so requires."
Last, the court found plaintiff had presented no proof to support its claim that the City had acted in bad faith by including the Berkowitz property within the development area for Edison's sole benefit. On July 20, 2007, the court entered an order granting defendants' motions for summary judgment and denying plaintiff's.
On appeal, plaintiff maintains, as it argued in the Law Division, that because it received no personal notice of the Planning Board's June 9, 2004 hearing or the Planning Board's June 28, 2004 resolution, it was unfairly deprived of the opportunity, and its right, to object to the recommended blight designation, which City Council accepted when it adopted its July 14, 2004 resolution. On February 25, 2008, after both sides submitted appellate briefs, DeRose, supra, was decided. In an April 22, 2008 supplemental submission authorized by Rule 2:6-11(d), plaintiff pointed to the decision in DeRose and argued that DeRose: 1) required the City to have provided plaintiff with personal notice of the July 14, 2004 blight designation, and 2) entitled plaintiff to reinstatement of its amended complaint that had been dismissed as untimely.
For its part, the City contends that DeRose is distinguishable because DeRose involved the rights of property owners. The City also contends that the only notice of the Planning Board hearing to which plaintiff as a tenant was entitled was that mandated by N.J.S.A. 40A:12A-6(b)(3). That statute requires notice "published in a newspaper of general circulation in the municipality once each week for two consecutive weeks," the last publication being "not less than ten days prior to the date set for the hearing." N.J.S.A. 40A:12A-6(b)(3). The City asserts that it provided Berkowitz, plaintiff's landlord, with individual notice of the hearing and it published notice of the hearing in The Star-Ledger for two consecutive weeks prior to the hearing. Thus, it argues it complied with the notice provisions of the LRHL.

II.
The process of redevelopment begins when the governing body adopts a resolution authorizing its Planning Board to conduct *69 a "preliminary investigation" of a delineated area to determine whether the proposed area satisfies any of the LRHL criteria for an area in need of redevelopment. N.J.S.A. 40A:12A-6(a). After the Planning Board completes the investigation, it conducts a public hearing "for the purpose of hearing persons who are interested in or would be affected by a determination that the delineated area is a redevelopment area." N.J.S.A. 40A:12A-6(b)(2).
As the City correctly contends, the Planning Board must give notice of the hearing in accordance with N.J.S.A. 40A:12A-6(b)(3), which provides:
The hearing notice shall set forth the general boundaries of the area to be investigated and state that a map has been prepared and can be inspected at the office of the municipal clerk. A copy of the notice shall be published in a newspaper of general circulation in the municipality once each week for two consecutive weeks, and the last publication shall be not less than ten days prior to the date set for the hearing. A copy of the notice shall be mailed at least ten days prior to the date set for the hearing to the last owner, if any, of each parcel of property within the area according to the assessment records of the municipality. A notice shall also be sent to all persons at their last known address, if any, whose names are noted on the assessment records as claimants of an interest in any such parcel. The assessor of the municipality shall make a notation upon the records when requested to do so by any person claiming to have an interest in any parcel of property in the municipality. The notice shall be published and mailed by the municipal clerk, or by such clerk or official as the planning board shall otherwise designate. Failure to mail any such notice shall not invalidate the investigation or determination thereon.
[N.J.S.A. 40A:12A-6(b)(3) (emphasis added).]
The foregoing statute makes clear, as the City argues, that only property owners and all persons "whose names are noted on the assessment records as claimants of an interest" are entitled to personal notice of the planning board hearing. Ibid. Here, plaintiff was not the owner of the property, and was not named on the City's tax assessment record. Therefore, plaintiff was not entitled by statute to personal notice of the Planning Board's hearing. Ibid.
At the hearing, "the planning board [must] hear all persons who are interested in or would be affected by a determination that the delineated area is a redevelopment area." N.J.S.A. 40A:12A-6(b)(4). The objections may be made orally or in writing. Ibid. After conducting the hearing, the planning board must recommend to the governing body whether the area, or any part of it, should be designated for redevelopment. N.J.S.A. 40A:12A-6(b)(5).
The governing body is required to send notice of the blight designation to anyone who filed a written objection to the designation at the Planning Board hearing. N.J.S.A. 40A:12A-6(b)(5). If such objections were filed, the governing body must wait forty-five days before it takes any further action. N.J.S.A. 40A:12A-6(b)(6). The text of the LRHL requires no further notice of the blight designation.
Once the above process is completed, the governing body shall adopt, pursuant to N.J.S.A. 40A:12A-7, a redevelopment plan for the area. N.J.S.A. 40A:12A-6(c). The LRHL does not require a municipality to submit a copy of the plan, or even notice of the plan's adoption, to anyone. The designation, "if supported by substantial evidence," is "binding and conclusive upon *70 all persons affected" by it. N.J.S.A. 40A:12A-6(b)(5).
Once the redevelopment plan is adopted, the governing body may use any of the powers listed in N.J.S.A. 40A:12A-8 to implement the plan. N.J.S.A. 40A:12A-6(c). Among them is the power to condemn the property and take it by eminent domain. N.J.S.A. 40A:12A-8(c).
Moreover, the governing body's designation of the delineated area as a "redevelopment area" N.J.S.A. 40A:12-6(b)(5), serves to deem the area "blighted" for purposes of the Blighted Areas Clause of the Constitution. N.J.S.A. 40A:12A-6(c). Any ensuing governmental taking of the property by eminent domain is consequently "treated as a legitimate `public purpose' for purposes of constitutional takings law." DeRose, supra, 398 N.J.Super. at 396-97, 942 A.2d 59.
Like any other challenge to municipal action, challenges to blight designations are subject to Rule 4:69-1 to -7, which establishes procedures for seeking to invalidate municipal action by the filing of an action in lieu of prerogative writs. Rule 4:69-6(a) requires such challenges be brought within forty-five days of the municipal action.
In DeRose, the trial court dismissed the property owner's claims finding that he had waited too long to assert them, and that others had reasonably relied on implementation of the project. DeRose, supra, 398 N.J.Super. at 385, 942 A.2d 59. At the latest, the trial court found DeRose should have filed his blight challenge within forty-five days of learning that his property had been designated blighted. Id. at 385, 942 A.2d 59. Because DeRose learned of the designation in January 2004, and did not file his challenge until 2006, the trial judge deemed both his blight challenge and his challenge to the constitutionality of the LRHL's notice provisions untimely pursuant to Rule 4:69-6(a). Id. at 385-86, 942 A.2d 59.
On appeal, we held that the redevelopment agency never provided sufficient notice to DeRose of the blight designation, and DeRose could not be denied an adequate opportunity to challenge it. Id. at 416-17, 942 A.2d 59. We explained that:
[i]ndividual notices mailed to all property owners in the designated zone are only specified for the initial planning board hearing to consider the "preliminary investigation." Thereafter, no individual notices are called for, except for notice of the governing body's adoption of a redevelopment designation, which is mailed only to the select few persons who take the time and effort to file a written objection with the planning board. And no one is statutorily entitled to individual notice of the town's ensuing adoption of a redevelopment plan, not even those whose properties are covered by that plan.
[Id. at 400, 942 A.2d 59.]
We held that, as drafted, the LRHL placed a property owner at risk of losing his property without having had a fair chance to contest the basis for the taking. Id. at 407-08, 942 A.2d 59. We concluded that:
[t]he statute [LRHL] lacks ... any individualized mechanism to assure that property owners are fairly informed that the blight designation, if approved by the governing body, operates as a conclusive finding of public purpose that will authorize the government to condemn their properties. The statute also fails to require that owners be apprised of any time limits for contesting a blight designation. Additionally, the statute omits any obligation to notify owners individually that the governing body has designated their premises as in need of *71 redevelopment, except for those prescient owners who filed a written objection with the Planning Board.
[Id. at 407, 942 A.2d 59.]
We held that these notice provisions were violative of state and federal due process guarantees. Id. at 408, 942 A.2d 59.
To cure the constitutional infirmity, we held that a property owner may challenge a blight designation beyond the forty-five-day period of Rule 4:69-6(a), and as an affirmative defense in a condemnation proceeding, unless the municipality
has provided the property owner with contemporaneous individual written notice that fairly alerts the owner that (1) his or her property has been designated by the governing body for redevelopment, (2) the designation operates as a finding of public purpose and authorizes the municipality to take the property against the owner's will, and (3) informs the owner of a presumptive time limit within which the owner may take legal action to challenge the designation.
[Id. at 413, 942 A.2d 59.]
Because DeRose never received that type of notice, we held that his right to pursue a blight challenge was preserved, and the trial court erred in concluding otherwise. Id. at 418, 942 A.2d 59.

III.
We turn now to a determination of whether the enhanced notice provisions that DeRose requires should also apply to commercial tenants such as plaintiff. In approaching that task, we remain mindful that "[t]he exact contours of due process cannot be defined. What it commands depends upon the specific facts presented." In re Allegations of Sexual Abuse at E. Park High Sch., 314 N.J.Super. 149, 160, 714 A.2d 339 (App.Div.1998). In assessing whether particular notice procedures are "constitutionally sufficient, the primary question is always whether there is a protectible liberty interest at stake." Ibid. That determination is the first prong of the three-prong test articulated in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Mathews also requires us to consider:
[S]econd, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
[424 U.S. at 335, 96 S.Ct. at 902, 47 L.Ed.2d at 33.]
Turning to the first prong, a tenancy is generally treated as a contractual right, not a property right. Only in the rarest of instances will a commercial tenant stand on the same footing as a fee simple owner. For example, even a tenant with a leasehold interest lasting as long as ninety-nine years is considered the equivalent of a fee simple owner for some purposes, but not for others. See City of Atlantic City v. Cynwyd Investments, 148 N.J. 55, 72, 689 A.2d 712 (1997).[2] Thus, if *72 the holder of a ninety-nine year lease is not uniformly regarded as the equivalent of a fee simple owner, it is readily apparent that a fifteen-year leaseholder like plaintiff cannot be deemed to possess a per se protectible interest for purposes of the first Mathews factor.
We turn next to the second Mathews factor, which requires us to determine whether there is so significant a risk of erroneous deprivation of the interest at stake that additional or substitute procedural safeguards would eradicate that erroneous risk. Specifically, we must determine whether the vindication of a tenant's rights at a later stage, namely during any ensuing condemnation proceedings, serves as an acceptable substitute for affording the individual notice that plaintiff demands during the earlier blight designation process. We turn to an analysis of the Eminent Domain Act (EDA), N.J.S.A. 20:3-1 to -50.
The EDA's provisions are significant because "the government's taking of property for purposes of redevelopment implicates not one, but two, statutes: the LRHL and the Eminent Domain Act." DeRose, supra, 398 N.J.Super. at 409, 942 A.2d 59. The LRHL specifies that, in carrying out a redevelopment plan, a municipality or redevelopment entity has the power to "[a]cquire, by condemnation, any land or building which is necessary for the redevelopment project, pursuant to the provisions of the `Eminent Domain Act of 1971[.]'" N.J.S.A. 40A:12A-8(c).
The EDA requires a municipality to compensate a "condemnee" for the fair market value of any property taken through the exercise of eminent domain. N.J.S.A. 20:3-6 and -12. However, before filing the verified complaint that begins the process of condemnation, the municipality or other condemnor must engage in bona fide negotiations to acquire title or possession of the subject property from the prospective condemnee. N.J.S.A. 20:3-6.[3]
The EDA broadly defines a condemnee as "the owner of an interest in the private property being condemned for a public purpose under the power of eminent domain," N.J.S.A. 20:3-2(c). In Cynwyd Investments, supra, the Court faced the question of whether, in light of the broad statutory definition of a condemnee contained in N.J.S.A. 20:3-2(c), a municipality must negotiate with "not only the record owners, but [also] tenants and other parties having an interest in the condemned party." 148 N.J. at 70, 689 A.2d 712. Turning to an analysis of the precise language of N.J.S.A. 20:3-6 (Section 6), the Court observed that Section 6 requires that "the negotiations are to be undertaken [only] with the condemnee who holds title of record of the property." Id. at 70, 689 A.2d 712 (quoting N.J.S.A. 20:3-6). Consequently, the Court held, Section 6 spares the municipality "the difficult requirement of negotiating with each condemnee having an interest in the property," *73 such as anchor tenants, each of the other tenants, and mortgagees. Ibid.
The Court reasoned that the "rights of all other condemnees with a compensable interest," such as commercial tenants, "are better protected by allowing them to participate later during the Commissioner's hearing, where value is determined, N.J.S.A. 20:3-12, and during the still subsequent proceeding [N.J.S.A. 20:3-34,] when compensation is allocated." Id. at 70-71, 689 A.2d 712. "In the absence of a contractual waiver, a tenant is entitled to an allocation of the value of its leasehold from the award of the value of the fee" simple interest. Jersey City Redevelopment Agency v. Exxon Corp., 208 N.J.Super. 53, 57, 504 A.2d 1207 (App.Div.1986).
In the event a condemnor files a complaint condemning the property, Rule 4:73-2 requires the condemnor to name both the record owner and any occupant of the property as parties to the action.[4] A tenant-occupant, in its answer to the condemnation complaint, may contest the condemnation by denying the condemnor's authority to condemn. N.J.S.A. 20:3-11. "[O]nce the condemnee files an answer denying the authority to condemn, `all further steps in the action shall be stayed until that issue has been finally determined.'" Twp. of Piscataway v. S. Washington Ave., LLC, 400 N.J.Super. 358, 368, 947 A.2d 663 (App.Div.2008) (quoting N.J.S.A. 20:3-11). Any issues to be decided "other than that of value and damages [including] a challenge to the plaintiff's right to exercise the power of eminent domain ... must be presented to and decided by the court before it enters judgment appointing condemnation commissioners." State, Comm'r of Transp. v. Orenstein, 124 N.J.Super. 295, 298, 306 A.2d 479 (App.Div.1973). Thus, if a condemnation complaint is filed, a commercial tenant is afforded the opportunity to challenge the action by denying the City's authority to condemn the property.
Unquestionably, the EDA provides clear and adequate procedural safeguards that protect a commercial tenant's leasehold interest in condemned property by affording the tenant the right to challenge the authority to condemn, and by affording him compensation for any losses that result from lease termination. As we have observed, the LRHL and the Eminent Domain Act must be read in tandem, not in isolation. DeRose, supra, 398 N.J.Super. at 409, 942 A.2d 59. The provisions of these related statutes must be "construed together as a unitary and harmonious whole." Am. Fire and Cas. Co. v. N.J. Div. of Taxation, 189 N.J. 65, 80, 912 A.2d 126 (2006) (citation omitted). So viewed, when the two statutes are read as a whole, it is evident that the notice procedures and substantive rights afforded a commercial tenant pursuant to the EDA make unnecessary any additional procedural safeguards at the earlier blight designation stage. Thus, plaintiff has not satisfied the second Mathews prong.
The third Mathews prong requires us to analyze the fiscal and administrative burdens that individual notice to commercial tenants would entail. Unquestionably, requiring a municipality to ascertain the identity of each tenant and provide individual notice to that tenant adds an enormous burden to the redevelopment process. Moreover, it is likely that from the time the municipality first requests its *74 Planning Board to undertake an investigation of whether a designated area is blighted through the time of the ultimate adoption of the redevelopment plan, one commercial tenant may vacate the premises and a new one may take its place. Such turnover creates the possibility of an almost endless cycle of challenges to the redevelopment process if each new commercial tenant were to be afforded the right to file a complaint challenging the blight designation. That possibility has the capacity to create unreasonable burdens on the redevelopment process.
Thus, our review of the three Mathews factors leads inexorably to the conclusion that neither the federal nor state Constitution affords plaintiff the right to individual notice at the blight designation stage. A tenancy is not a per se protectible interest, the condemnation stage affords the tenant a comprehensive and complete forum for the vindication of its rights, and the administrative burdens of requiring individual notice at the earlier blight designation stage are enormous. We thus decline to find a constitutional right to individual notice for commercial tenants during the LRHL proceedings.
Moreover, we are reluctant to interfere with the policy judgment that the Legislature has made. It is evident that the Legislature was well aware that a commercial tenant has a direct stake in the governmental taking of property. For that reason, the Legislature provided a tenant the right to seek compensation when its lease is prematurely terminated by the condemnation of the property. It is clear, however, that by choosing not to afford tenants individual notice of the LRHL blight designation process, the Legislature has made a policy determination that the tenant's right to individual notice should not be recognized unless, and until, the condemnor proceeds to the condemnation stage. We must assume that when the Legislature limited the right of notice and an opportunity to be heard in the LRHL context to owners of record and those whose are listed on the tax assessor's records, see N.J.S.A. 40A:12A-6(b)(3), the Legislature did so intentionally. State v. Vonderfecht, 284 N.J.Super. 555, 559, 665 A.2d 1145 (App.Div.1995).
We conclude that the EDA affords commercial tenants such as plaintiff a full and fair opportunity to obtain redress for any financial losses sustained as a result of the governmental taking. We see no reason, statutory, constitutional, or otherwise, to engraft onto the LRHL an individual notice requirement the Legislature itself chose not to require for commercial tenants. See Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 560-62, 964 A.2d 741, 2009 WL 414336 at **11 (2009).
Consequently, we hold that the Legislature has not, and did not, intend to afford commercial tenants the right to individual notice with regard to the blight designation process of the LRHL. Moreover, because commercial tenants do not have an interest entitled to individualized recognition and protection at the earlier blight designation stage, there is no basis to extend to them the notice that we held in DeRose must be afforded to the owners of record. Consequently, the Law Division correctly held that plaintiff was obliged to comply with the forty-five day filing requirement of Rule 4:69-6(a) even though it had been afforded no individual notice of the July 14, 2004 City Council meeting at which Council declared the Core Area blighted.[5] Plaintiff's remaining *75 contentions lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Notably, this description of the property is inconsistent with the findings of a planner retained by plaintiff, who in his June 2005 report found "no evidence of any significant deterioration," and opined that the building had only "isolated cosmetic deficiencies," which "did not appear to compromise the integrity of the building" or the "high level of security associated with the building's current use."
[2] In Cynwyd Investments, supra, 148 N.J. at 72, 689 A.2d 712, the Court identified Lake End Corp. v. Twp. of Rockaway, 185 N.J.Super. 248, 256, 448 A.2d 475 (App.Div.1982) (holding that "ninety-nine year leaseholds are the equivalent of a fee ownership for the purposes of real estate taxation, valuation and assessment"), and Ric-Cic Co. v. Bassinder, 252 N.J.Super. 334, 341-42, 599 A.2d 943 (App. Div.1991) (permitting such lessees to apply for a zoning variance), as circumstances where courts of this State have held that ninety-nine year lessees are the equivalent of fee simple owners under the common law.

The Court also identified West Jersey Grove Camp Ass'n v. City of Vineland, 80 N.J. Super. 361, 365, 193 A.2d 785 (App.Div.1963) (holding that senior citizens' tax exemptions are not available to tenants with ninety-nine year leases), as an example of a situation where ninety-nine year lessees that lacked options to renew were not afforded the same rights as a fee simple owner. Cynwyd Investments, supra, 148 N.J. at 72, 689 A.2d 712.
[3] The purpose of this statutory provision is "to encourage settlements and the voluntary acquisition of property needed for public purposes, allowing both the public entity and land owner to avoid the expense and delay of litigation and a trial, while permitting the land owner to receive just compensation." Cynwyd Investments, supra, 148 N.J. at 71, 689 A.2d 712.
[4] Rule 4:73-2 provides that the following individuals or entities "shall be made parties" to a condemnation action: "The record owner, the occupant, if any, such other persons appearing of record to have any interest in the property and such persons claiming an interest therein as are known to the plaintiff[.]"
[5] In light of our disposition, there is no need to evaluate the judge's alternative holding that plaintiff was aware of the redevelopment proceedings early enough to have complied with the requirements of Rule 4:69-6(a) had it chosen to do so.